UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

In Re:

EDWARD LUBIN                                    Case No. 8:23-bk-03168-RCT
                                               Chapter 11

        Debtor.
_____ _____/

## DEBTOR'S CHAPTER 11, SUBCHAPTER V PLAN OF REORGANIZATION DATED AUGUST 15, 2023[1]

## BRIEF HISTORY AND BACKGROUND

A       Description and History of the Debtor's Business

        Dr. Edward Lubin (the "**Debtor**" or "**Plan Proponent**") is a physician.  The Debtor is

board certified in anesthesia, pain medicine, and addiction medicine.  The Debtor is currently

employed by Tampa Pain Relief Centers, Inc. in Tampa, Florida.

        The Debtor and his spouse, who is a non-debtor, own their primary residence located at

12524 Blazing Star Drive, Tampa, FL 33626 ("**Homestead**").

        The Debtor filed this Chapter 11 case in order to treat all creditors fairly and equitably.

        The Debtor is a defendant in pending litigation filed by the United States of America (the

"Government") in the United States District Court for the Middle District of Florida, Tampa

Division, Case No. 8:21-cv-02231-TPB-CPT, titled *United States of America vs. Edward Lubin*.

The Debtor vehemently disputes the allegations in this lawsuit.  The Government has filed an

Expedited Motion for Determination that the Automatic Stay Does not Bar the Continuation of its

False Claims Act Case Against the Debtor or, in the Alternative, for Relief from the Automatic

---

[1] The Debtor filed a detailed Chapter 11 Case Management Summary (Doc. No. 8).  The Debtor's Case Management Summary is adopted herein by reference and its additional background supplements the Debtor's Plan.

Stay (Doc. No. 7) ("**Motion**"). On August 14, 2023, the Debtor filed an Objection to the Government's Expedited Motion for Determination that the Automatic Stay Does Not Bar the Continuation of its False Claims Act Case Against the Debtor or, in the Alternative, for Relief from the Automatic Stay (Doc. No. 20) ("**Opposition**").   The hearing on the Motion and Opposition is set for August 16, 2023 at 10:00 A.M.

After evaluating alternatives, the Debtor determined that a Subchapter V Chapter 11 filing would provide a venue in which to effectively address his current debts and best serve the interests of his creditors.  The Debtor will utilize the Chapter 11 process to reorganize his financial affairs and make distributions to creditors efficiently and effectively.

B.       Liquidation Analysis

To confirm the Plan, the Court must find that all creditors and equity interest holders who do not accept the Plan will receive at least as much under the Plan as such claim and equity interest holders would receive in a chapter 7 liquidation. A liquidation analysis is attached to the Plan as Exhibit "A."

C.       Ability to Make Future Plan Payments and Operate Without Further Reorganization

The Plan Proponent must also show that he will have enough cash over the life of the Plan to make the required Plan payments.  The Debtor's Plan will be funded by income derived from projected disposable income.

The Debtor's projected disposable income will, among other things, result in (a) payment of all administrative expenses of the chapter 11 case which are currently estimated to be $200,000.00, for all professional fees including the fees of the Debtor's counsel and subchapter V Trustee; (b) payment of secured claims and priority tax claims; and (c) payment of approximately $451,300.00 to the holders of allowed unsecured claims on a pro-rata basis.

The Plan Proponent has provided projected financial information as Exhibit B.

The Plan Proponent's financial projections show that the Debtor will have projected disposable income (as defined by § 1191(d) of the Bankruptcy Code) for the period described in § 1191(c)(2).

The final Plan payment is expected to be paid in the 60th month from confirmation of the Plan which is anticipated to be made in calendar year 2028.

**Questions related to the financial projections or liquidation analysis can be directed to Debtor's counsel.  In addition, creditors should consult with their respective legal counsel, accountant or other financial advisor if there are any questions pertaining to the projections or liquidation analysis**.

## ARTICLE 1
## SUMMARY

This Plan of Reorganization (the "Plan") under chapter 11 of the Bankruptcy Code (the Code) proposes to pay all creditors of the Debtor from projected disposable income derived from his wages and distributions from CMG Corporation.  In addition, the Debtor is contributing $100,000 of his exempt retirement assets solely to pay for the projected Allowed Administrative Expense Claims.

This Plan provides for two (2) classes of secured claims and one (1) class of non-priority unsecured claims.  Non-priority unsecured creditors holding allowed claims will receive distributions as set forth in Article 4 of this Plan.  This Plan also provides for the payment of administrative claims.

All creditors and equity security holders should refer to Articles 1 through 4 of this Plan for information regarding the precise treatment of their claim. **Your rights may be affected. You**

should read these papers carefully and discuss them with your attorney if you have one. (If you do not have an attorney you may wish to consult one.)

## ARTICLE 2
## CLASSIFICATION OF CLAIMS AND INTERESTS

2.01   **Class 1**.  Class 1 consists of the secured claim of PNC Bank in the approximate amount of $436,046.91 in connection with a mortgage encumbering the Debtor's Homestead.

2.02   **Class 2**.  Class 2 consists of the secured claim of Southeast Toyota Finance in the amount of approximately $6,944.59, which indebtedness is secured by the Debtor's 2019 Toyota Camry, VIN: 516711.

2.03   **Class 3**.  Class 3 consists of all non-priority unsecured claims allowed under § 502 of the Code.

## ARTICLE 3
## TREATMENT OF ADMINISTRATIVE EXPENSE CLAIMS, PRIORITY TAX CLAIMS, PRIORITY CLAIMS AND ADMINISTRATIVE EXPENSE CLAIMS

3.01   Unclassified Claims.  Under section §1123(a)(1), administrative expense claims and priority tax claims are not in classes.

3.02   Administrative Expense Claims.  Each holder of an administrative expense claim allowed under § 503 of the Code will be paid in full on the Effective Date of this Plan, in cash, or upon such other terms as may be agreed upon by the holder of the claim and the Debtor. Administrative expense claims relating to the fees and costs of professionals are estimated to be approximately $200,000.00 or more (after payment of any interim fees).  This amount includes Debtor's counsel in the approximate amount of $185,000.00 and the Subchapter V Trustee in the approximate amount of $15,000.00.  The Administrative Expense Claims of Debtor's Counsel and the Subchapter V Trustee shall be paid on the Effective Date of the Debtor's Plan. The allowed

Administrative Expense Claims should be less if the Debtor reaches a resolution with the Government.

       3.03   <u>Priority Tax Claims</u>   Each holder of an allowed priority tax claim will be paid consistent with § 1129(a)(9)(C) of the Code.   The Debtor is not aware of any priority tax claims.

       3.04   <u>Statutory Fees, if any</u>.   No fees are due under 28 U.S.C. § 1930 pursuant to Pub. L. No. 116-54 § 41(b)(3) (amending 28 U.S.C. § 1930(a)(6) excluding cases under Subchapter V).

       3.05   <u>Prospective Quarterly Fees, if any</u>.  No quarterly fees are due under the Plan.

**ARTICLE 4**
**TREATMENT OF CLAIMS AND INTERESTS UNDER THE PLAN**

       4.01   Claims and interests shall be treated as follows under this Plan:

| Class | Description | Insider? | Impairment | Treatment |
|-------|-------------|----------|------------|-----------|
| 1 | Secured | No | Not Impaired | Class 1 consists of the secured claim of PNC Bank in the approximate amount of $436,046.91 in connection with a mortgage encumbering the Debtor's Homestead.<br><br>The Debtor shall pay the secured claim of Class 1 by making payments in accordance with the underlying loan documents. |
| 2 | Secured | No | Not Impaired | Class 2 consists of the secured claim of Southeast Toyota Finance in the amount of approximately $6,944.59, which indebtedness is secured by the Debtor's 2019 Toyota Camry, VIN: 516711.<br><br>The Debtor shall pay the secured claim of Class 2 by making payments in accordance with the underlying loan documents. |

| 3 | Non-Priority Unsecured Claims | No | Impaired | Class 3 consists of all non-priority unsecured claims allowed under § 502 of the Code.<br><br>Each Holder of an allowed unsecured claim shall receive five annual payments of such Holder's pro rata share of projected disposable income as set forth on Exhibit B. The payments shall begin one year after the Effective Date and on an annual basis each year thereafter, with the last payment due on the fifth anniversary of the Effective Date. |

**ARTICLE 5**
**ALLOWANCE AND DISALLOWANCE OF CLAIMS**

5.01    Disputed Claim.    A disputed claim is a claim that has not been allowed or disallowed by a final non-appealable order and, and as to which either: (i) a proof of claim has been filed or deemed filed, and the Debtor or another party in interest has filed an objection; or (ii) no proof of claim has been filed, and the Debtor has scheduled such claim as disputed, contingent or unliquidated. Any objection to claims shall be filed within 30 days of the confirmation of the Debtor's Plan.

5.02    Delay of Distribution on a Disputed Claim.    No distribution will be made on account of a disputed claim unless such claim is allowed by a final non-appealable order.

5.03    Settlement of Disputed Claims.    The Debtor will have the power and authority to settle and compromise a disputed claim with Court approval and compliance with Rule 9019 of the Federal Rules of Bankruptcy Procedures.

**ARTICLE 6**
**PROVISIONS FOR EXECUTORY CONTRACTS AND UNEXPIRED LEASES**

6.01    Executory Contracts and Unexpired Leases.

(a)     The Debtor does not have any executory contracts or unexpired leases to assume.

(b)     The Debtor does not have any executory contracts or unexpired leases to reject.

**ARTICLE 7**
**MEANS FOR IMPLEMENTATION OF THE PLAN**

7.01    Funding Source for Plan Payments.  The Plan will be funded from income derived from projected disposable income and a contribution from exempt retirement assets solely to pay the estimated Administrative Expense Claims as set forth in Exhibit B.

7.02    Distributions by Debtor.  All distributions under the Plan shall be made by the Debtor, whether the Plan is confirmed pursuant to Section 1191(a) or (b) of the Bankruptcy Code.

7.03    Unclaimed Distributions.  If the Holder of an Allowed Claim fails to negotiate a check for a Distribution issued to such Holder within 60 days of the date such check was issued, then the Reorganized Debtor shall provide written notice to such Holder stating that, unless such Holder negotiates such check within 30 days of the date of such notice, the amount of Cash attributable to such check shall be deemed to be unclaimed, such Holder shall be deemed to have no further Claim in respect of such check, such Holder's Allowed Claim shall no longer be deemed to be Allowed, and such Holder shall not be entitled to participate in any further Distributions under the Plan in respect of such Claim.  If a check for a Distribution made pursuant to the Plan to any Holder of an Allowed Claim is returned to the Reorganized Debtor due to an incorrect or incomplete address for the Holder of such Allowed Claim, and no claim is made in writing to the

Reorganized Debtor as to such check within 30 days of the date such Distribution was made, then the amount of Cash attributable to such check shall be deemed to be unclaimed, such Holder shall be deemed to have no further Claim in respect of such check, such Holder's Allowed Claim shall no longer be deemed to be Allowed, and such Holder shall not be entitled to participate in any further Distributions under the Plan in respect of such Claim. Any unclaimed Distribution as described above shall revert to the Reorganized Debtor free of all claims.

7.04    Default.  If the Debtor fails to make any payment required under the Plan and if such default continues for a period of 30 days following receipt by the Debtor of written notice of such default, unless the Debtor disputes the existence of the alleged payment default, the Debtor shall, within 30 days, cure said default or seek relief from the Bankruptcy Court.  In the event of an uncured default which is not resolved or paid by virtue of a post-confirmation modification of the Plan, creditors may pursue their remedies in any court of competent jurisdiction.

## ARTICLE 8
## GENERAL PROVISIONS

8.01    Definitions and Rules of Construction.  The definitions and rules of construction set forth in §§ 101 and 102 of the Code shall apply when terms defined or construed in the Code are used in this Plan, and they are supplemented by the following definitions:

(a)    Bar Date: "Bar Date" means the last date for filing a Proof of Claim against the Debtor in this Chapter 11 Case, which is October 4, 2023.

(b)    Confirmation: "Confirmation" means the entry by the Bankruptcy Court of the Order confirming and approving this Plan or any subsequent version of such Plan. Upon the Confirmation Order becoming final and non-appealable, this will establish the "Effective Date" of the Plan.

(c)    <u>Debtor's Counsel</u>: "Debtor's Counsel" shall mean Edward J. Peterson, III and the law firm of Johnson, Pope, Bokor, Ruppel & Burns, LLP (collectively "Johnson Pope") of Tampa, Florida.

(d)    <u>Petition Date</u>: "Petition Date" means July 26, 2023.

8.02    <u>Effective Date of the Plan.</u>  The Effective Date of this Plan is the 30th day following the entry of the Court's order confirming this Plan.    If, however, a stay of the confirmation order is in effect on this date, the Effective Date will be the first business day after the date on which the stay of the Confirmation Order expires or is otherwise terminated.

8.03    <u>Severability.</u>  If any provision in this Plan is determined to be unenforceable, the determination will in no way limit or affect the enforceability and operative effect of any other provision of this Plan.

8.04    <u>Binding Effect.</u>  The rights and obligations of any entity named or referred to in this Plan will be binding upon and will inure to the benefit of the successors or assigns of such entity.

8.05    <u>Captions.</u>  The headings contained in this Plan are for convenience of reference only and do not affect the meaning or interpretation of this Plan.

8.06    <u>Controlling Effect.</u>  Unless a rule of law or procedure is supplied by federal law, including the Code or the Federal Rules of Bankruptcy Procedure, the laws of the State of Florida govern this Plan and any agreements, documents and instruments executed in connection with this Plan, except as otherwise provided in this Plan.

8.07    <u>Retention of Jurisdiction</u>.  The Bankruptcy Court will retain jurisdiction as provided for by the Bankruptcy Code and other applicable law.    The Bankruptcy Court will retain jurisdiction to determine all issues related to the Debtor's Plan, assumption of executory contracts,

objections to claims, settlements approved by the Bankruptcy Court, including the enforcement of any Plan default.

## ARTICLE 9
## RELEASE AND DISCHARGE

9.01   <u>Consensual Plan</u>.  If the Plan is confirmed under § 1191(a), on the confirmation date of this Plan, the Debtor will be discharged from any debt that arose before confirmation of this Plan, subject to the occurrence of the Effective Date, to the extent specified in § 1141(d)(1)(A) of the Code, except that the Debtor will not be discharged of any debt imposed by this Plan or any debt excepted from discharge under 11 U.S.C. § 523.

9.02   <u>Non-consensual Plan</u>.  If the Plan is confirmed under § 1191(b), the Debtor shall receive his discharge once all payments due under Plan have been made, except that the Debtor will not be discharged of any debt imposed by this Plan or any debt excepted from discharge under 11 U.S.C. § 523.

9.03   <u>Discharge and Release by Holders of Claims and Interests</u>. Except for the obligations expressly imposed by the Plan, the distributions and rights that are provided in the Plan shall be in complete satisfaction, discharge, extinguishment and termination of all such Claims against, liabilities of, liens on, obligations of and interests in the Debtor.

9.04   <u>Exculpation from Liability</u>. The Debtor and the Professionals for the Debtor, including Debtor's Counsel (collectively, the "Exculpated Parties"), shall neither have nor incur any liability whatsoever to any Person or Entity for any act taken or omitted to be taken in good faith in connection with or related to the formulation, preparation, dissemination, or confirmation of the Plan, the exhibits to the Plan, any document prepared in connection with the Plan, or any contract, instrument, release, or other agreement or document created or entered into, or any other act taken or omitted to be taken, in connection with the Plan or this Chapter 11 Case, in each case

for the period on and after the Petition Date and through the Effective Date; provided, however, that this exculpation from liability provision shall not be applicable to any liability found by a court of competent jurisdiction to have resulted from fraud or the willful misconduct or gross negligence of any such party. With respect to Professionals, the foregoing exculpation from liability provision shall also include claims of professional negligence arising from the services provided by such Professionals during this Chapter 11 Case. Any such claims shall be governed by the standard of care otherwise applicable to the standard of negligence claims outside of bankruptcy. The rights granted under this Article 9.04 are cumulative with (and not restrictive of) any and all rights, remedies, and benefits that the Exculpated Parties have or obtain pursuant to any provision of the Code or other applicable law. In furtherance of the foregoing, the Exculpated Parties shall have the fullest protection afforded under Section 1125(e) of the Code and all applicable law from liability for violation of any applicable law, rule or regulation governing the solicitation of acceptance or rejection of a plan. This exculpation from liability provision is an integral part of the Plan and is essential to its implementation.  Notwithstanding anything to the contrary contained herein, the provisions of this Article 9.04 shall not release, or be deemed a release of, any causes of action.

## ARTICLE 10
## NO LIABILITY FOR TAX CLAIMS

10.01   Unless a taxing Governmental Authority has asserted a Claim against the Debtor before the Bar Date or Administrative Expense Claims Bar Date established therefore, no Claim of such Governmental Authority shall be allowed against the Debtor or the Reorganized Debtor or their respective agents for taxes, penalties, interest, additions to tax or other charges arising out of (i) the failure, if any, of the Debtor, any of his affiliates, or any other person or entity to have paid tax or to have filed any tax return (including any income tax return or franchise tax return) in or

for any prior year or period, or (ii) an audit of any return for a period before the Petition Date.

Dated: August 15, 2023                    Respectfully submitted,


By: /s/ Edward Lubin
Edward Lubin

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing **PLAN OF REORGANIZATION** has been furnished on August 15, 2023, by the Court's CM/ECF electronic mail system to all parties receiving CM/ECF electronic noticing.

JOHNSON POPE BOKOR
RUPPEL & BURNS, LLP

/s/ Edward J. Peterson
Edward J. Peterson (FBN 014612)
401 E Jackson Street, Ste. 3100
Tampa, Florida 33602
Telephone: (813) 225-2500
Email: edwardp@jpfirm.com
Attorneys for Debtor

**Edward Lubin**

**Exhibit A Liquidation Analysis**

| Assets | LIQUIDATION VALUE | REORGANIZATION PLAN |
|---|---|---|
| 12524 Blazing Star Drive (Homestead) | Exempt | Exempt |
| Jaguar Vehicles | $16,435.20 | $27,392.00 |
| Toyota Camry | Immune - Tenancy by the Entireties | Immune - Tenancy by the Entireties |
| Household goods and furnishings | Immune - Tenancy by the Entireties | Immune - Tenancy by the Entireties |
| Household Electronics | Immune - Tenancy by the Entireties | Immune - Tenancy by the Entireties |
| Clothing and Jewelry | Exempt | Exempt |
| Miscellaneous Clothing & Jewlery | Exempt | Exempt |
| Cash in Joint Bank accounts | Immune - Tenancy by the Entireties | Immune - Tenancy by the Entireties |
| Cash in Bank | $55,720.72 | $55,720.72 |
| Stocks - Brookfield Renewable Partners' LP and Hennion & Walsh, Inc. | $29,260.00 | $41,800.00 |
| Interest in CMG Corporation (potentially exempt) | $0.00 | $180,000.00 |
| Retirement Funds - IRAs | Exempt | Exempt |
| Claim against Gessler Clinic, PA for wrongful termination | Unknown | Unknown |
| | | |
| **Total Assets** | **$101,415.92** | **$304,912.72** |
| | | |
| **Liabilities** | | |
| Chapter 11 Administrative Expense Claims | $200,000.00 | $200,000.00 |
| Chapter 7 Administrative Fees | $10,000.00 | $0.00 |
| Secured Claims | $442,546.50 | $442,546.50 |
| **Total Liabilities** | **$652,546.50** | **$642,546.50** |
| | | |
| **TOTAL AVAIL TO ALLOWED UNSECURED CLAIMS** | **-$551,130.58** | **$451,300.00** |

# Exhibit "A"

| Exhibit B - 5-year Case Flow Projections | Year 1 | Year 2 | Year 3 | Year 4 | Year 5 | Amount paid under the plan |
|---|---|---|---|---|---|---|
| Net wages | $331,008.00 | $331,008.00 | $331,008.00 | $331,008.00 | $331,008.00 | |
| Distribution from CMG Corp | $36,000.00 | $36,000.00 | $36,000.00 | $36,000.00 | $36,000.00 | |
| Funding from Exempt Assets | $100,000.00 | $0.00 | $0.00 | $0.00 | $0.00 | |
| Total Income | $467,008.00 | $367,008.00 | $367,008.00 | $367,008.00 | $367,008.00 | |
| Real Estate Taxes - included in mortgage | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | |
| Homeowners Insurance - included in mortgage | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | |
| HOA fees | $708.00 | $708.00 | $708.00 | $708.00 | $708.00 | |
| Home Maintenance and upkeep | $18,000.00 | $18,000.00 | $18,000.00 | $18,000.00 | $18,000.00 | |
| Electric/Water/Sewer/garbage | $6,000.00 | $6,000.00 | $6,000.00 | $6,000.00 | $6,000.00 | |
| Telephone, cell phone, internet | $5,040.00 | $5,040.00 | $5,040.00 | $5,040.00 | $5,040.00 | |
| Food, housekeeping | $18,000.00 | $18,000.00 | $18,000.00 | $18,000.00 | $18,000.00 | |
| clothing/laundry, dry cleaning | $6,000.00 | $6,000.00 | $6,000.00 | $6,000.00 | $6,000.00 | |
| personal care products/services | $3,000.00 | $3,000.00 | $3,000.00 | $3,000.00 | $3,000.00 | |
| medical/dental out of pocket expenses | $60,000.00 | $60,000.00 | $60,000.00 | $60,000.00 | $60,000.00 | |
| Transportation costs | $12,000.00 | $12,000.00 | $12,000.00 | $12,000.00 | $12,000.00 | |
| entertainment, clubs, subscriptions | $6,000.00 | $6,000.00 | $6,000.00 | $6,000.00 | $6,000.00 | |
| Charitable Contributions | $4,800.00 | $4,800.00 | $4,800.00 | $4,800.00 | $4,800.00 | |
| Life Insurance | $3,000.00 | $3,000.00 | $3,000.00 | $3,000.00 | $3,000.00 | |
| Vehicle Insurance | $4,800.00 | $4,800.00 | $4,800.00 | $4,800.00 | $4,800.00 | |
| Income taxes | $30,000.00 | $30,000.00 | $30,000.00 | $30,000.00 | $30,000.00 | |
| Legal Expenses | $7,500.00 | $7,500.00 | $7,500.00 | $7,500.00 | $7,500.00 | |
| Emergency Fund | $20,000.00 | $20,000.00 | $20,000.00 | $20,000.00 | $20,000.00 | |
| Total Expenses | $204,848.00 | $204,848.00 | $204,848.00 | $204,848.00 | $204,848.00 | |
| Cash Flow | $262,160.00 | $162,160.00 | $162,160.00 | $162,160.00 | $162,160.00 | |
| Administrative Expenses | $200,000.00 | $0.00 | $0.00 | $0.00 | $0.00 | $200,000.00 |
| Class 1 - PNC Bank Mortgage | $50,500.00 | $50,500.00 | $50,500.00 | $50,500.00 | $50,500.00 | $252,500.00 |
| Class 2 - Toyota Southeast Finance | $7,000.00 | $0.00 | $0.00 | $0.00 | $0.00 | $7,000.00 |
| Total | $257,500.00 | $50,500.00 | $50,500.00 | $50,500.00 | $50,500.00 | |
| Annual Net Cash Flow - Payment to Class 3 General Unsecured Creditors | $4,660.00 | $111,660.00 | $111,660.00 | $111,660.00 | $111,660.00 | $451,300.00 |

Exhibit "B"