## UNITED STATES BANKRUPTCY COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION
www.flmb.uscourts.gov

In re:

EDWARD LUBIN

    Debtor.

_____/

Case No. 8:23-bk-03168-RCT
Chapter 11

### THE UNITED STATES AND GESSLER CLINIC'S
### JOINT MOTION TO DISMISS BANKRUPTCY PETITION
### OR CONVERT TO CHAPTER 7 PETITION FOR CAUSE
### DUE TO BAD FAITH FILING

Pursuant to 11 U.S.C. § 1112(b)(1), the United States of America and Gessler Clinic, P.A., ("Gessler") jointly file the instant motion to dismiss Debtor Edward Lubin's Chapter 11 bankruptcy petition as a bad faith filing or, alternatively, to convert it to a Chapter 7 proceeding. The Debtor filed his bankruptcy petition to stymie the United States' lawsuit against him. His subsequent actions have only further clarified the Debtor's abuse of the bankruptcy process for the purpose of frustrating pending litigation.

The circumstances under which the Debtor filed his bankruptcy petition—seven days before trial was set to begin in the United States' civil prosecution of its False Claims Act case against him ("the FCA Action")—do not evidence a good faith pursuit of equitable protection under the Bankruptcy Code. Rather, the Debtor sought to avoid trial against the United States, as well as the collateral consequences of an unfavorable jury verdict, including the preclusive effect of a judgment (1) in

exclusionary proceedings brought by federal health care programs, and (2) in the Debtor's state court litigation against his former employer, Gessler, for wrongful termination, and Gessler's counterclaim against the Debtor for breach of contract.[1] ("Employment Contract Suit").

As demonstrated below, both the timing of the Debtor's petition and the Debtor's schedule of assets and liabilities demonstrate that the Debtor's Chapter 11 petition was filed solely to prevent the FCA Action from being litigated before a jury in district court. Notably,

> "[t]he cornerstone of the bankruptcy courts has always been the doing of equity. The protections and forgiveness inherent in the bankruptcy laws surely require conduct consistent with the concepts of basic honesty. Good faith or basic honesty is the very antithesis of attempting to circumvent a legal obligation through a technicality of law."

*In re Waldron*, 785 F.2d 936, 941 (11th Cir. 1986). Because the Debtor needlessly seeks to utilize the protections of the bankruptcy court as a tactic to circumvent litigation and avoid accountability for his alleged conduct, the Court should dismiss the instant petition as a bad faith filing or convert the petition to a Chapter 7 petition.

## BACKGROUND

The Debtor has known that the United States was investigating him for potential violations of the False Claims Act (FCA) since 2020. On October 6, 2020, the United States presented the results of its investigation to Debtor; on this date

---

[1] Gessler's counterclaim is basically grounded in the same conduct alleged in the FCA Action; namely that Debtor's participation in a sham speaker program and acceptance of kickbacks justified Gessler's termination of Debtor.

Debtor knew the United States was asserting over $3.7 million in single damages and therefore over $12 million in treble damages and penalties. After failed settlement talks, the United States filed the FCA Action against the Debtor on September 21, 2021. *United States v. Lubin*, Case No. 8:21-cv-2231 (M.D. Fla.) ("*FCA Action*"), Doc. 1. The Complaint sought the imposition of treble damages and civil penalties under the FCA based on the claims presented to Debtor in 2020. *Id.* at 2, 14, 42, 46–47, 48.

The United States' allegations against the Debtor in the FCA Action encompass the same conduct that led to Gessler's termination of the Debtor in 2016. *Compare FCA Action*, Doc. 1, *with* Doc.18-2 (containing Gessler's letter of termination to the Debtor). Shortly after the United States initiated the FCA Action, the Debtor (re)filed the Employment Contract Suit against Gessler; he had previously dismissed a prior action against Gessler on the same grounds. *See Lubin v. Gessler Clinic, P.A.*, Polk County Court Case No. 2021-CA-002801, refiled Sept. 21, 2021; *see also* Doc. 18, pp. 2–4 (explaining the history of the Employment Contract Suit). In response, Gessler filed a counterclaim against the Debtor for breach of contract based on Debtor's violation of a Gessler policy and Debtor's improper acceptance of monies from Insys, a drug manufacturer. Doc. 18-1 (containing Gessler's Answer, Affirmative Defenses, and Counterclaim filed in the Employment Contract Suit on June 28, 2022).

Despite his knowledge of the amount of the United States' claims in the FCA Action since at least October 2020, the Debtor waited until seven days prior to the trial date set for August 2, 2023, and just one day before the district court's final pretrial conference, to file the instant bankruptcy petition. To date, the Debtor is involved in

litigation against the United State in three separate suits—the instant petition, the FCA Action, and an appeal of this Court's order finding the automatic stay inapplicable to the FCA Action ("Automatic Stay Appeal"), which is pending in district court before U.S. District Court Judge Thomas P. Barber.

According to Schedule E/F and the claims registry, the Debtor's unsecured creditors include:

- The United States for $0 in litigation claims, which the United States represents is $10 million in treble damages, plus penalties (Doc. 25, p. 21);

- Gessler for $932,216.50 (Claim 7-1);

- American Express in the amount of $43,036.88 in credit card debt, which is comprised primarily of a payment made to Debtor's special counsel one day before the filing of bankruptcy (Claim No. 5-1, p. 6);

- Christopher Hunt for an unknown amount in litigation claims (Doc. 25, p. 20); and

- Dominick Intagliato for an unknown amount in litigation claims (Doc. 25, p. 20; Claim No. 4-1).

Three secured creditors have filed fully secured claims against the Debtor: (1) Hillsborough County Tax Collector for $6,680.93 related to unpaid property taxes (Claim No. 1-1); (2) PNC Bank, N.A. for $432,712.69 related to a mortgage on the Debtor's homestead (Claim No. 2-1); and (3) World Omni Financial Corp. for $5,876.19 related to a vehicle loan (Claim No. 6-1).

As demonstrated above, the United States and Gessler are by far the Debtor's largest unsecured creditors with respect to the bankruptcy estate.[2] The Debtor's scheduled assets clearly establish that the Debtor has the ability to pay his other creditors without the need of bankruptcy. The limited number of claims in this bankruptcy, the timing of the bankruptcy petition, and the Debtors' assets exceeding his liabilities all evidence that the Debtor filed the instant bankruptcy petition in an attempt to thwart the United States' and Gessler's claims against him—specifically, by interfering with the United States' FCA Action and by limiting the collateral effect of a judgment in the United States' favor on Gessler's counterclaim in Debtor's Employment Contract Suit. For these reasons, the Court should dismiss Debtor's Chapter 11 bankruptcy petition as a bad faith filing, or, alternatively, convert it to a Chapter 7 petition, dependent on the best interests of the Debtor's creditors.

## **ARGUMENT**

The Debtor and the United States were previously set for an eight-day jury trial commencing on August 2, 2023. *FCA Action*, Doc. 59. The filing of this Chapter 11 petition—just one week prior to the start of trial—delayed that jury trial (*id.*, Doc. 73), as it was designed to do. Because the petition was filed in bad faith, it should be dismissed or, alternatively, converted to a Chapter 7 petition.

---

[2] On October 3, 2023, the Debtor filed a ballot tabulation representing that one party with a $10 million claim voted in favor of the Debtor's Plan. Doc. 97. The ballot tabulation does not list the creditor's name, and there is no proof of claim or claim listed in the Debtor's schedules for a debt in the amount of $10 million. Accordingly, there is no allowed claim under 11 U.S.C. § 502.

Under 11 U.S.C. § 1112(b)(1), "on request of a party in interest, and after notice and a hearing, the court *shall* convert a case under this chapter to a case under chapter 7 or dismiss a case . . . , whichever is in the best interest of creditors and the estate." 11 U.S.C. § 1112(b)(1) (emphasis added). "In the litigation of a motion brought under section 1112(b) to dismiss a Chapter 11 petition, the movant has the burden of proof." *In re Bal Harbour Club, Inc.*, 316 F.3d 1192, 1195 (11th Cir. 2003).

"A case under Chapter 11 may be dismissed for cause pursuant to section 1112 of the Bankruptcy Code if the petition was not filed in good faith." *In re Phoenix Piccadilly, Ltd.*, 849 F.2d 1393, 1394 (11th Cir. 1988). "A good faith filing requires that the petition must be field with the honest intent and genuine desire to utilize the provisions of [the Bankruptcy Code] for its intended purpose . . . and not merely as a device to serve some sinister and unworthy purpose of the petitioner." *Waldron*, 785 F.2d at 939 (quoting *In re S. Land Title Corp.*, 301 F. Supp. 379, 428 (E.D. La. 1968)). Indeed, "court[s] cannot and will not tolerate such misuse of the reorganization process." *Id.*  A bankruptcy court also has the authority to impose sanctions based on a finding of bad faith. *In re Rivas*, 682 F. App'x 842, 845 (11th Cir. 2017).

"Bad-faith bankruptcy filings significantly burden the legal system in general and bankruptcy courts in particular." *In re Piazza*, 719 F.3d 1253, 1262 (11th Cir. 2013). "Although there is no particular test for determining whether a debtor has filed a petition for reorganization in good faith, in finding a lack of good faith, courts have emphasized an intent to abuse the judicial process and the purposes of the

reorganization provisions." *In re Nat. Land Corp.*, 825 F.2d 296, 298 (11th Cir. 1987). Factors listed by courts in determining whether a petition has been filed in bad faith are not exhaustive. *Id.* However, factors considered by courts within the Eleventh Circuit have included the timing of the debtor's relevant actions, "whether the debtor is financially distressed," "whether the petition was filed strictly to circumvent pending litigation," and the lack of a realistic possibility of an effective reorganization. *Id.*; *In re Dixie Broad., Inc.*, 871 F.2d 1023, 1027 (11th Cir. 1989); *Singer Furniture Acquisition Corp. v. SSMC Inc. N.V.*, 254 B.R. 46, 52 (M.D. Fla. 2000); *In re Moog*, 159 B.R. 357, 360 (Bankr. S.D. Fla. 1993). Related factors evidencing bad faith include circumstances in which: the debtor makes no life-style adjustments or continues living a lavish lifestyle; the debtor filed the case *in response to pending litigation*; there is an intent to avoid a large, single debt; the debtor has sufficient resources to pay his debts; and the schedules *inflate expenses* to disguise financial well-being. *Piazza*, 719 F.3d at 1259. "In light of its inherently discretionary nature, a totality-of-the-circumstances approach is the correct legal standard for determining bad faith . . . ." *Id.* at 1271.

"Section 1129 forbids a court from accepting a reorganization plan which has not been proposed in good faith." *Nat. Land Corp.*, 825 F.2d at 298. "[Th]e taint of a petition filed in bad faith must naturally extend to any subsequent reorganization proposal; thus, any proposal submitted by a debtor who filed his petition in bad faith would fail to meet section 1129's good faith requirement." *Phoenix Piccadilly*, 849 F.2d at 1395. Moreover, "[t]he possibility of a successful reorganization cannot transform

a bad faith filing into one undertaken in good faith." *Id*. "If the court discovers unmistakable manifestations of bad faith . . . , confirmation must be denied." *Waldron*, 785 F.2d at 941. The Eleventh Circuit does not require "unmistakable manifestations of bad faith" to be based upon actual fraud or proof of malice, rather the Eleventh Circuit requires that "the bankruptcy courts preserve the integrity of the bankruptcy process by refusing to condone its abuse." *Id*.

I. **The Debtor's Chapter 11 Petition Was Filed to Circumvent Pending Litigation**

The Debtor's petition was filed to prevent the FCA Action from proceeding to a jury trial and judgment. In doing so, the Debtor sought to avoid: (1) the reputational harm that would inevitably occur from a jury's determination that he accepted kickbacks to prescribe Subsys and/or wrote medically unnecessary prescriptions of Subsys; (2) the legal consequences of an FCA judgment that would allow the U.S. Department of Health and Human Services' Office of Inspector General to exercise its permissive authority to exclude the Debtor from participating with federal healthcare programs under 42 U.S.C. § 1320a-7(b)(7); and (3) the collateral effect that a jury's determination of FCA violations would have on the Debtor and Gessler's claims in the Employment Contract Suit.

As stated by the Eleventh Circuit, considerations that may indicate bad faith in initiating a bankruptcy petition include a debtor's intent to abuse the judicial process, such as "a debtor's intentional efforts to delay or frustrate legitimate creditors" and a

debtor's use of bankruptcy "as a refuge from another's court's jurisdiction." *Piazza*, 719 F.3d at 1271 n.7. Evidence of both factors is present here.

Since filing this bankruptcy case, the Debtor has used his bankruptcy petition as a litigation tool to push for a more favorable settlement in the FCA Action. Even though the United States obtained an Order finding that the FCA Action could proceed through entry of a judgment, the Debtor has attempted to block the FCA Action at every turn. *E.g.*, Doc. 47 (noticing the Debtor's appeal of the Court's August 18, 2023 Order following the district court's rescheduling of the FCA Action for trial in mid-October); Doc. 52 (moving the bankruptcy court for a stay pending an appeal of the Court's August 18, 2023 Order); *In re Lubin v. United States*, Case No. 8:23-cv-01889- (M.D. Fla.), Doc. 4 (moving the district court for an expedited stay pending appeal of the bankruptcy Court's August 18, 2023 Order permitting the FCA Action to proceed); *FCA Action*, Doc. 84 (moving the district court for a settlement conference prior to the October 5, 2023 pretrial conference in the FCA Action); Doc. 98 (pushing for confirmation on October 5, 2023, following the district court's placement of the FCA Action on its trial calendar for October 16, 2023).

Instead of a quick liquidation of the United States' claim in the FCA Action, the Debtor seeks to force the United States to redo two years of litigation in the bankruptcy court. (Doc. 52, p. 5.) Presumably, the Debtor believes the United States will lose its resolve and settle its claim for a significant discount if faced with the prospect of relitigating the FCA Action in bankruptcy court. The Debtor is mistaken.

The Debtor's actions are improper and evidence an abuse of the bankruptcy court, whose "laws are intended as a shield, not as a sword." *Waldron*, 785 F.2d at 940. Courts have repeatedly found bad faith where a debtor has filed bankruptcy case in response to pending litigation and there is an intent to avoid a large, single debt. *Piazza*, 719 F.3d at 1259. Under such circumstances, dismissal is appropriate. *E.g.*, *Nat. Land Corp.*, 825 F.2d at 298 ("Plainly stated, Natural Land abused the bankruptcy process when it used the automatic stay provision to bide time[.]"); *In re Moog*, 159 B.R. 357, 358 (Bankr. S.D. Fla. 1993) (finding that the debtor's Chapter 11 petition "was filed in bad faith in an effort to avoid execution on a divorce judgment and to improperly use the bankruptcy court as a forum to renegotiate the divorce"); *Bal Harbour Club*, 316 F.3d at 1193, 1194 (affirming the dismissal of a bankruptcy filing as an improper use of the bankruptcy process where evidence of such improper use included the initiation of litigation to frustrate a property acquisition). In line with these cases and the evidence of the Debtor's attempt to utilize the bankruptcy process to similarly circumvent the FCA Action, the Court should dismiss the Debtor's bankruptcy petition as a bad faith filing.

## II.     The Timing of the Debtor's Bankruptcy Petition Evidences an Intent to Abuse the Judicial Process

The timing of the Debtor's petition evidences an intent to circumvent pending litigation. The Debtor waited until one week prior to the start of trial in the FCA Action, and one day after the parties filed their Joint Pretrial Statement, to file his petition for bankruptcy. *See FCA Action*, Docs. 59, 67, 69.

U.S. Bankruptcy Judge Craig T. Goldblatt of the District of Delaware recently considered the scrutiny with which courts should approach bankruptcy petitions filed on the eve of trial based on the concern that "the bankruptcy filing may be operating as a last-ditch effort by the debtor to stave off impending defeat in another forum." *In re AP Orangevale, LLC*, No. 23-10687, 2023 WL 5093819, at *9 (D. Del. Aug. 8, 2023). Judge Goldblatt's discussion of the scrutiny attached to bankruptcy petitions filed "on the eve of trial" was cited by this Court at its September 15, 2023 hearing on the Debtor's motion to stay the FCA Action pending appeal of the Court's Order concerning the non-applicability of the automatic stay to the FCA Action. Transcript of the Court's September 15, 2023 Hearing, attached as **Exhibit A**, at 26:19–27:7. Though the *AP Orangevale* decision was similarly decided in the context of a motion for stay relief, Judge Goldblatt explicitly recognized that the concern surrounding bankruptcy petitions filed on the eve of trial was consistent with principles reflected in "cases on the good-faith use of the bankruptcy process, which is intended to guard against the use of bankruptcy as a litigation tactic." *AP Orangevale, LLC*, 2023 WL 5093819, at *9

Courts in the Eleventh Circuit routinely consider the timing of bankruptcy petitions filed close in time to pivotal proceedings in outside forums in their analysis of circumstances warranting dismissal of a bankruptcy petition as a bad faith filing. *E.g.*, *Singer Furniture*, 254 B.R. at 52 (M.D. Fla. 2000) (concluding that "[the debtor] filing its bankruptcy petition on the eve of trial in the Virginia matter, after three unsuccessful attempts to transfer that case to Florida, does more than raise a suspicious

11

eyebrow"); *Phoenix Piccadilly*, 849 F.2d 1393 (affirming the lower courts' findings of bad faith on part of the debtor in filing a Chapter 11 bankruptcy petition a day prior to a state court hearing to appoint a receiver in mortgage foreclosure proceedings); *Piazza*, 719 F.3d at 1260 ("In the court's view, [the debtor's] bankruptcy petition was not the result of a 'sudden financial disaster' or 'medical crisis' but rather 'was timed perfectly to' impede [the creditor's] collection efforts on the state-court judgement."); *In re Albany Partners, Ltd.*, 749 F.2d 670, 673–74 (11th Cir. 1984) (affirming the bankruptcy court's finding that the Chapter 11 petition was not filed in good faith and, therefore, should be dismissed, based in part on the fact that the debtor waited until the eve of a foreclosure sale to file the Chapter 11 petition). Similarly, because there is no reasonable explanation as to why the Debtor filed for bankruptcy when he did except to prevent the FCA Action from proceeding to trial, the Court should find that the timing of the Debtor's bankruptcy petition evidences bad faith.

### III. The Debtor's Available Assets and Lack of Liabilities Evidence Bad Faith

A review of the financial filings in this action also reveals that the Debtor is not financially distressed and possessed the ability to pay all of his debts, aside from a potential judgment against him in the FCA Action, prior to the filing of his bankruptcy petition. Moreover, as stated above, factors evidencing bad faith with respect to a debtor's assets and liabilities also include circumstances where the debtor makes no life-style adjustments or continues living a lavish lifestyle, the debtor has sufficient resources to pay his debts, and the schedules inflate expenses to disguise financial well-being. *Piazza*, 719 F.3d at 1259.

The Court commented on the apparent discrepancy concerning the Debtor's liabilities during its hearing on September 15, 2023. Specifically, the Court noted that "there doesn't appear to be a lot of creditors in this case." Transcript of the Court's September 15, 2023 Hearing, Ex. A, at 27:23. Recognizing that the United States' claim "potentially dwarfs other claims, perhaps even the Gessler claim," the Court found that the United States' claim was not going away and "has to be litigated." *Id.* at 28:3–4. Despite the Court's comments and the objection to the Debtor's Plan by the United States and Gessler—the Debtor's largest unsecured creditors (*see* Docs. 90, 91)—the Debtor continues to push for a confirmation of his Plan to prevent the FCA Action—which would otherwise be concluded by the month's end—from going forward. *See* Docs. 97, 98. To be sure, bad-faith avoidance of litigation in the FCA Action continues to be the Debtor's aim.

Another particularly salient example of the Debtor's bad faith with respect to his assets and liabilities is the seemingly orchestrated timing of a preferential payment to his counsel in the FCA Action with his American Express credit card just one day prior to initiating the bankruptcy petition, as illustrated below. *See* Claim No. 5-1, p. 6.

| | Detail Continued | | | ♦ - denotes Pay Over Time and/or Cash Advance activity |
|---|---|---|---|---:|
| | | | | Amount |
| 07/25/23 | SISCO-LAW +18888582546 | TAMPA | FL | $43,036.88 |
| 07/26/23 | PAYPAL *SPOTIFYUSAI 2033189708 | 2033189708 | NY | $11.31 ♦ |
| 08/09/23 | UBER ONE 8005928996 | help.uber.com | CA | $9.99 ♦ |
| 08/10/23 | PAYPAL *CONDE NAST 8008252510 | 8008252510 | DE | $169.99 ♦ |

13

Indeed, by July 25, 2023, the Debtor would have known of the impending bankruptcy petition and yet chose to charge legal fees to his credit card to give the appearance of a disinterested third-party creditor that is unconnected with the FCA Action when he had the assets to pay his counsel outright. Such blatantly dishonest actions plainly evidence bad faith.

Importantly, the United States is far and away the Debtor's largest creditor and will likely receive approximately 90 to 95% of all *pro rata* distributions to unsecured creditors in a confirmed plan. The United States' debt is also nondischargeable in bankruptcy. 11 U.S.C. § 523(a)(2), (6), (7). Accordingly, the Debtor's lack of creditors beyond the United States and Gessler supports a determination that the Debtor filed bankruptcy merely to thwart the United States' and Gessler's litigation against him. Moreover, the Debtor has not been candid about the valuation of his assets, presumably to reduce the amount he would have to pay to unsecured creditors under a confirmed plan. These factors are hallmarks of a bad faith filing.

IV.  **The Impossibility of the Debtor's Reorganization Plan Evidences Bad Faith**

The lack of a realistic possibility of an effective reorganization is another relevant factor recognized by courts in the Eleventh Circuit as evidence of a bankruptcy case filed in bad faith. *Singer Furniture*, 254 B.R. at 52. Here, an effective reorganization is not possible as the United States has a nondischargeable claim that accounts for 90% or more of the Debtor's total liabilities.

As explained more fully in the United States' objection to the Plan, the Debtor's Plan is patently unconfirmable under 11 U.S.C. §§ 1129, 1191. *See generally* Doc. 90,

pp. 4–16. Specifically, the Debtor has undervalued his assets and filed a projected budget that includes seemingly inflated expenses that are unsubstantiated and not reasonably necessary for the Debtor and his wife's maintenance. *Id.* at 9–11, 13–16; *see also* Doc. 85. As far back as August 10, 2023, the United States requested, and the Debtor agreed to produce, documentation to corroborate the valuation of his assets and expenses. To date, the Debtor has produced virtually no documents to the United States. In fact, despite the Debtor's stated intention to produce these documents voluntarily, the United States had to issue Rule 2004 examination notices to the Debtor and his wife for the requested documents when it became apparent that the Debtor would not comply voluntarily. Docs. 53, 54. Both the Debtor and his wife have since negotiated a production schedule that would permit the production of documents *after* the confirmation hearing currently scheduled on October 5, 2023. *See* Docs. 80, 81. It is clear the Debtor intends to move for a swift confirmation before the United States would have an opportunity to adequately review documents corroborating the expenses in his projected budget. Docs 97, 98. Presumably, the Debtor has failed to turn over these documents because they do *not* corroborate the expenses claimed in the projected budget, evidencing bad faith. If the United States' suspicions are correct, the Debtor would have to revise his projected budget and pay more money to the unsecured creditor class. 11 U.S.C. § 1191(c)(2).

For these reasons and others explained more fully in the United States' objection to plan (Doc. 90), the Debtor will be unable to obtain confirmation of a plan of reorganization, which, in turn, evidences bad faith in initiating the instant petition.

Such abuse of the bankruptcy process should be remedied by dismissal, or conversion, of this action.

## CONCLUSION

For the reasons stated above, the United States and Gessler respectfully request that the Court dismiss the Debtor's Chapter 11 bankruptcy petition as a bad faith filing or, alternatively, convert it to a Chapter 7 case, whichever is in the best interest of creditors.

Dated: October 4, 2023						Respectfully submitted,

ROGER B. HANDBERG
UNITED STATES ATTORNEY

*/s/ Christopher J. Emden*
CHRISTOPHER J. EMDEN
Assistant United States Attorney
USA No. 158
400 N. Tampa Street, Suite 3200
Tampa, FL 33602
Tel:   (813) 274-6000
Fax: (813) 274-6198
E-mail: Christopher.Emden@usdoj.gov

*/s/ Somadina I. Nwokolo*
SOMADINA I. NWOKOLO
Assistant United States Attorney
Fla. Bar No. 120126
400 North Tampa Street, Suite 3200
Tampa, FL 33602
Phone: 813-274-6000
Fax: 813-274-6200
E-Mail: soma.nwokolo@usdoj.gov

*Counsel for the United States*

PETERSON & MYERS, P.A.
*/s/Matthew J. Vaughn*
ROBERT E. PUTERBAUGH
Florida Bar No. 120371
MATTHEW J. VAUGHN
Florida Bar No. 0092122
Post Office Box 24628
Lakeland, FL 33802-4628
Phone: 863-683-6511
Fax: 863-884-1629
Email: mjvpleadings@petersonmyers.com
rputerbaugh@petersonmyers.com

*Attorneys for Gessler Clinic, P.A.*

17

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on October 4, 2023, I electronically filed the foregoing with the Court using the Court's CM/ECF filing system, which will send an electronic notice of filing to all parties of record:

Edward J. Peterson
edwardp@jpfirm.com
Attorney for the Debtor

Kathleen L. DiSanto
disanto.trustee@bushross.com
Subchapter V Trustee

Teresa M. Dorr
teresa.dorr@usdoj.gov
U.S. Trustee

United States Trustee-TPA
ustpregion21.tp.ecf@usdoj.gov

I HEREBY CERTIFY FURTHER that on or about October 4, 2023, I mailed a copy of the foregoing via U.S. Mail to the following:

Edward Lubin, M.D.
12524 Blazing Star Dr.
Tampa, FL 33626

Mailing Matrix

                                            */s/ Christopher J. Emden*
                                            CHRISTOPHER J. EMDEN
                                            Assistant United States Attorney