# EXHIBIT A

```
                    IN THE UNITED STATES BANKRUPTCY COURT
                     FOR THE MIDDLE DISTRICT OF FLORIDA
                               TAMPA DIVISION

- - - - - - - - - - - - - - - x
IN RE:                        :
                              :
EDWARD LUBIN                  :  Case No. 8:23-bk-03168-RCT
                              :   Subchapter V - Chapter 11
                   Debtor     :
- - - - - - - - - - - - - - - x  U.S. Courthouse
                                 801 N. Florida Avenue
                                 Tampa, Florida
                                 September 15, 2023
                                 11:00 A.M.
```

**TRANSCRIPT OF HEARING**

Expedited Motion for Stay Pending Appeal filed by Edward J. Peterson, III on behalf of Debtor Edward Lubin (Doc. #52)

**BEFORE THE HONORABLE ROBERTA A. COLTON**
**UNITED STATES BANKRUPTCY JUDGE**

*PROCEEDINGS RECORDED BY COURT PERSONNEL.*
*TRANSCRIPT PRODUCED BY TRANSCRIPTION SERVICE*
*APPROVED BY ADMINISTRATIVE OFFICE OF U.S. COURTS.*

SCHULTZ REPORTING OF PASCO, INC.
3350 Chickadee Dr.
Holiday, Florida 34690
(727) 808-1484

A P P E A R A N C E S
VIA IN-PERSON, ZOOM, AND/OR TELEPHONE

For Debtor:                 EDWARD J. PETERSON, III, Esquire
                            Johnson Pope Bokor Ruppel & Burns LLP
                            401 East Jackson Street, Suite 3100
                            Tampa, Florida 33602
                            (813) 225-2500
                            edwardp@jpfirm.com

For the United
States:                     CHRISTOPHER J. EMDEN, Esquire
                            Assistant United States Attorney
                            USA No. 158
                            400 N. Tampa Street, Suite 3200
                            Tampa, Florida 33602
                            (813) 274-6000
                            christopher.emden@usdoj.gov

For Office of
U.S. Trustee:               TERESA MARIE DORR, Esquire
                            Office of the U.S. Trustee
                            Timberlake Annex Building
                            501 E. Polk Street, Suite 1200
                            Tampa, Florida 33602
                            (813) 228-2000
                            teresa.dorr@usdoj.gov

For Gessler Clinic,
P.A.:                       MATTHEW J. VAUGHN, Esquire
                            Peterson & Myers, P.A.
                            P.O. Box 24628
                            Lakeland, FL 33802-4628
                            (863) 683-6511
                            mvaughn@petersonmyers.com

Subchapter V
Trustee:                    KATHLEEN L. DISANTO
                            Bush Ross, P.A.
                            1801 N. Highland Avenue
                            Tampa, FL 33602
                            (813) 224-9255
                            disanto.trustee@bushross.com

Also present:               Jeremy Bloor
                            Kelly Howard Allen
                            Somadina Nwokolo
                            Dr. Edward Lubin

```
 1              P R O C E E D I N G S

 2         COURTROOM DEPUTY:  Calling cases from the Court's

 3  11:00 o'clock calendar, Case 23-3168, Edward Lubin.

 4         We will take appearances in the courtroom first.

 5  All interested parties please come forward and enter your

 6  appearance.

 7         MR. PETERSON:  Good morning, Your Honor.  Edward

 8  Peterson on behalf of the Debtor Dr. Edward Lubin.  Mr. --

 9  Dr. Lubin is on the Zoom call.

10         MR. EMDEN:  Good morning, Your Honor.  Christopher

11  Emden on behalf of the United States.  And here with me

12  today is Jeremy Bloor, Kelly Howard Allen, and Somadina

13  Nwokolo.

14         THE COURT:  Very good.

15         COURTROOM DEPUTY:  And on Court Solutions, Ms.

16  Dorr?  I mean Zoom.  I'm sorry.

17         MS. DORR:  Good morning, Your Honor.  Teresa Dorr

18  on behalf of the United States Trustee.

19         COURTROOM DEPUTY:  Ms. DiSanto?

20         MS. DISANTO:  Good morning, Your Honor.  Kathleen

21  DiSanto, the Subchapter V Trustee.

22         COURTROOM DEPUTY:  Mr. Vaughn?

23         MR. VAUGHN:  Good morning, Your Honor.  Matthew

24  Vaughn.  I'm here for Gessler Clinic.

25         COURTROOM DEPUTY:  And those are the appearances,
```

1  Judge.

2          THE COURT:  All right.  Good morning, everyone.

3  We're here this morning on the Debtor's expedited motion for

4  a stay pending appeal, so I'll start with Mr. Peterson.

5          MR. PETERSON:  Yes.  Thank you, Your Honor.

6  Edward Peterson on behalf of the Debtor, Dr. Edward Lubin.

7          Your Honor, we're here on a motion to stay pending

8  the appeal that we filed of Your Honor's order finding that

9  the police power exception applied or, in the alternative,

10  that the stay should be lifted for cause.  We filed the

11  appeal a couple weeks ago.  The -- following the appeal --

12  following Your Honor's ruling there was a status conference

13  in front of Judge Barber, and it looks like from what I

14  understand the trial is likely going to get set sometime in

15  mid-October.

16          So we filed this motion to stay and as we pointed

17  out in the papers, and as Your Honor is well aware, there is

18  four factors we have to establish.  And admittedly we have

19  to establish all four, I think the case law says by a

20  preponderance of the evidence.  The case law also says that

21  if you're strong on one, that might excuse maybe not being

22  so strong on another.  So it's a little bit of a balancing

23  test based on what --

24          THE COURT:  It's similar to an injunction --

25          MR. PETERSON:  Right.

1              THE COURT:  -- analysis.

2              MR. PETERSON:  Right.  Right.  So obviously the

3    first one that we have to establish, which is always fun to

4    argue to the judge that entered the order, that we have a

5    likelihood of success on the merits on the appeal.  But --

6    and when you look at that factor, and I'll just -- in terms

7    of the standard for that factor, Judge Williamson in the

8    *Lickman* case, which the Government cited, tells us that the

9    likelihood of success is shown when the movant has raised

10   questions going to the merits so serious, substantial and

11   difficult and doubtful as to make them a fair ground for

12   litigation and thus for more deliberate inquiry.  That's in

13   the *Lickman* opinion, 301 B.R. 739, a 2003 opinion.

14             And then Judge Glenn in the *F.G. Metals* case,

15   citing to the Eleventh Circuit case of *Antonio v. Bello*,

16   tell us that if the party requesting a stay is unable to

17   show that the challenged decision was clearly erroneous, he

18   may nevertheless obtain relief by establishing that the

19   three remaining criteria tend strongly in his favor.  In

20   other words, although the appellant must typically show that

21   success on the merits is likely or probable, a stay may

22   nevertheless be issued where the appellant demonstrates that

23   his or her chances of success are merely substantial so long

24   as a strong showing weighing heavily in the appellant's

25   favor is made on the latter three elements.  So -- and

1   that's in the *F.G. Metals* case, 390 B.R. 467 (2008).

2           So when you look at this factor in this case, Your

3   Honor noted in the order that the fact that the Government

4   is not seeking injunctive relief makes it a closer call.

5   We -- and I'm not going to rehash the old arguments that

6   we've made that Your Honor considered in entering the order.

7           But this case factually I think is different from

8   most of the cases that hold that the police power exception

9   applies to an FCA case.  The Government is not seeking

10  injunctive relief.  The Government has not pursued Dr. Lubin

11  criminally.

12          The public policy that we hear -- that we heard

13  about at the last hearing of curtailing the opioid crisis,

14  as we argued before, this is not a case where that is at

15  issue because we're talking -- we have to keep in mind Dr.

16  Lubin is a physician.  Part of his practice involves

17  prescribing pain medication for patients with severe pain.

18  So -- and it's -- it's not the proper prescription of

19  fentanyl that contributes to the opioid crisis, it's the

20  illicit use and obviously people abusing it.  And it's our

21  position that that's not what happened here, that there was

22  proper prescriptions provided.  And so that was in what we

23  put in the request for judicial notice.

24          The -- at the end of the day, the Government has

25  not done anything to try to prevent Dr. Lubin from

1   prescribing the medication, taken away his license.  There

2   hasn't been any prescribing of this drug since 2016.  It was

3   small part of his prescriptions when he did prescribe it.

4          This is a case -- again, I don't want to rehash

5   this, but we think this is a case about money damages.  And

6   Judge Barber at the status conference reiterated that, as

7   well.  And for that reason, there's at least, as Judge

8   Williamson said, there's at least a fair ground for

9   litigation and thus a need for more deliberate inquiry.

10         And so we think at the very least it meets that

11  standard that there is a fair ground for litigation.  This

12  is not a case where there is a -- there was an ongoing harm,

13  which is what we see in most of those cases involving FCA

14  claims and the police power exception.  There was no

15  criminal prosecution.  They have sought -- again, they had a

16  fraud count in their complaint.  They're seeking money

17  damages that we would argue doesn't fall within the police

18  power exception.

19         Now, Your Honor also lifted the stay for cause.

20  And again I don't want to get in the old arguments, but

21  we -- when you look at the Sonnax factors, as we argued in

22  our papers and at the hearing, those factors we think weigh

23  in favor of keeping the stay in place for the reasons that

24  we argued.  And again, at the very least I mean that's a

25  balancing test.  And I understand that the courts give you

1  discretion in terms of an order lifting the stay, but it is

2  a balancing test that's subject to interpretation.  We think

3  that the factors weight in favor of not lifting the stay for

4  cause, and at the very least there's a fair ground for

5  litigation with respect to that issue.

6         When you look at the second factor, which is

7  irreparable harm, and I'm cognizant of the cases that hold

8  that monetary harm is not sufficient.  What I would argue in

9  this case is we also have the potential problem that if

10 there is not a stay entered, that if the trial goes forward

11 in October, it seems to me that the appeal might be moot.  I

12 mean, I -- that's a fear that I have.  And there are cases

13 that say that alone is not enough in terms of the equitable

14 mootness, but I would cite the Court to the *In re Los*

15 *Angeles Dodgers* case, 465 B.R. 18, a District of Delaware

16 opinion, 2012, where the court instructed; although the risk

17 of equitable mootness is not, by itself, sufficient to

18 demonstrate irreparable harm to justify a stay pending

19 appeal, it is a factor courts may consider in terms of

20 whether there is irreparable harm.

21        If you couple that with the fact that if the stay

22 is -- if Your Honor does not enter a stay that we

23 potentially are litigating on two fronts the Debtor is going

24 to have to commit funds to cover that cost.  There's going

25 to be time, money, energy.  And again, that by itself may

1   not be enough to show the irreparable harm, but when you

2   couple it with the potential for equitable mootness if the

3   stay is not entered, then we would argue that that -- those

4   two factors together satisfy the irreparable harm component.

5          What we are essentially asking Your Honor to do is

6   enter the stay, proceed to confirmation -- we can always

7   estimate the claim of the Government, proceed to

8   confirmation.  We are in a Sub V as Your Honor knows.  We

9   have to commit projected disposable income and show that the

10  creditors are receiving at least as much as they would

11  receive in a hypothetical Chapter 7.  Even if the claim is

12  not dischargeable, the Government will be bound by the terms

13  of the Plan as long as the Debtor is complying with the

14  Plan.

15         So our argument is, that's the most efficient way

16  to proceed.  Your Honor can determine dischargeability and

17  liquidation in one -- in one forum here and that will cut

18  down costs and expenses.  When you couple that with the

19  potential for equitable mootness, we think that that would

20  satisfy the irreparable harm component.

21         Now when you look at the third factor, which is

22  the harm to the Government if the stay is entered.  There's

23  really no harm in terms of a collection standpoint because

24  the Debtor is in bankruptcy, subject to the jurisdiction of

25  the Court, can't transfer assets outside the ordinary

1  course, and again we are prepared to proceed to confirmation

2  quickly.  We are set for confirmation on the -- on September

3  28th, and there are mechanisms for dealing with what we do

4  with the Government's claim, if Your Honor were inclined to

5  estimate it if you enter the order staying the appeal.  So

6  in terms of harm to the Government, we think that factor

7  weighs in favor of a stay.

8        And then the final factor is the public policy

9  issues.  And in the *Lickman* case, Judge Williamson did

10  instruct that there's a great public policy in ensuring that

11  the bankruptcy case continue to an orderly, efficient

12  resolution to maximize and preserve the estate's assets.

13  And that's what we're arguing.  In terms of the public

14  policy, judicial economy and efficiency are best served by

15  staying the -- Your Honor's order, having Your Honor

16  liquidate the claim and determine dischargeability.

17        The public policy concerns, as I've talked about

18  with respect to what is the public policy that the

19  Government is trying to protect, we don't think are

20  implicated here based on the items that we requested in the

21  judicial notice request and the arguments that we've made,

22  you know, in terms of the fact that this really is just a

23  complaint for monetary damages.  Judge Barber agreed with

24  that.  When you look at the factors and you take them in

25  their totality, we think this is a case where Your Honor has

1    a justification for entering a stay pending appeal.

2            With that, that's -- if Your Honor has any

3    questions, I'm glad to answer them.

4            THE COURT:  Thank you.  Thank you, Mr. Peterson.

5    All right.  Mr. Emden, would you like to respond?

6            MR. EMDEN:  Yes, Your Honor.  Your Honor, as an

7    initial matter I would like to thank the Court for

8    rescheduling this hearing from Tuesday to Friday to

9    accommodate my schedule.  I'm greatly appreciative of that.

10           Your Honor, based on what the -- on what's in the

11   Debtor's motion and what we've heard today, the United

12   States requests that the Court deny the stay pending appeal

13   because the Debtor has failed to meet any of the four

14   requisite elements.

15           On whether the Debtor is likely to prevail on the

16   merits of the appeal, the Court correctly determined that

17   the FCA case is excepted from the automatic stay under the

18   police and regulatory power under Section 362(b)(4), and

19   that there is cause -- and in the alternative that there was

20   cause to lift the stay under Section 362(d)(1) for the case

21   to proceed through entry of the judgment.

22           I'm not going to reargue the legal issue here.

23   Your Honor had oral argument that I believe lasted about an

24   hour.  The Court wrote a 12-page opinion on this in which

25   the Court ruled in favor of the United States.  But I will

1   just, you know, re-emphasize that the Court's decision is

2   consistent with all cases in the past 30 years that have

3   ruled that FCA cases are exempt from the automatic stay or

4   the police and regulatory power.  And that includes the

5   seminal decision in *United States v. Commonwealth Companies*,

6   as well as cases within the Eleventh Circuit, *United States*

7   *ex. rel. Green v. The Institute of Cardiovascular*

8   *Excellence,* which was Judge Dalton's case, *United States v.*

9   *Central Medical System*, which was Judge Anton's case, as

10  well as the *Nemerofsky* case from the Southern District of

11  Florida.  In fact, the only one from the Eleventh Circuit is

12  Judge Paskay's *Bicoastal* decision, which the Court

13  explicitly declined to follow based on the facts of this

14  case.

15          The Court also held that the United States was

16  entitled to relief from stay under Section 362(d)(1) because

17  cause existed for four reasons.  Your Honor, those reasons

18  were conservation of judicial resources, lack of

19  interference with the bankruptcy case from continuation of

20  the FCA case, lack of prejudice to other creditors, and the

21  United States' sufficient showing of likelihood of

22  succeeding in the FCA case.  This determination is subject

23  to an abuse of discretion of the standard, Your Honor, which

24  we believe that the Debtor cannot overcome on appeal.

25          THE COURT:  Mr. Emden, let me just ask a quick

1  question.  You had filed some papers attached to your

2  response, and one of them seemed to indicate that there was

3  still some ongoing discovery in the District Court action of

4  I think it was depositions of patients.  Has that been

5  completed?

6           MR. EMDEN:  Your Honor, I believe that that is

7  still ongoing.  My understanding is that Dr. Lubin's side

8  has added additional witnesses to their witness list.  The

9  United States is preparing to depose some of those

10  witnesses, but I don't believe that those depositions have

11  taken place yet, but substantial preparation to undertake

12  them has occurred so far.

13           THE COURT:  Okay.  Thank you.

14           MR. EMDEN:  Your Honor, I don't believe that the

15  Debtor has stated anything today that calls into question

16  the legitimacy of Your Honor's order.  And based on that, I

17  don't believe that the Debtor has shown a successive

18  likelihood on the merits.

19           On the second factor, the Debtor must show that it

20  will face irreparable harm if the stay is denied.

21  Ultimately what we have heard today, Your Honor, and in the

22  motion is that it comes down to that the Debtor believes its

23  asset -- that the bankruptcy estate's assets are better to

24  be used towards reaching confirmation, towards potential

25  dischargeability issues, and to liquidating the Government's

1  claim in this court.  But that all amounts to just saving

2  money, time and energy.

3           But the Eleventh Circuit has made clear that, and

4  I quote, "mere injuries, however substantial, in terms of

5  money, time, and energy necessarily expended in the absence

6  of a stay, are not enough."  That's the *Cunningham v. Adams*

7  case.  In the order the Court also stated; that in excepting

8  the police and regulatory actions from the automatic stay,

9  Congress surely must have anticipated that such proceedings

10 would necessarily be defended.  The trial costs will no

11 doubt be formidable, but it is not for this court to factor

12 in such costs when determining application of a statutory

13 exception to the automatic stay.  I would submit, Your

14 Honor, that the same point is applicable here.

15          I would also add in that the Debtor has obtained

16 authority of the Court to pay retainers to two special

17 counsel from exempt retirement assets.  Until those

18 retainers are exceeded, the bankruptcy estate will not incur

19 any additional expenses.  The Debtor has not made any sort

20 of showing that the legal expenses would even exceed the

21 amount of the retainer.  So it's unclear that there would

22 even actually be any potential, you know, diminution of any

23 estate assets.

24          THE COURT:  Well in fairness I think that $100,000

25 was going to be used to pay administrative expenses in the

1    case too.  I think that's included in the Plan that's on the

2    table.  So the less that they have to -- that goes to

3    administrative claims from the exempt assets is more --

4    means more for the other creditors, obviously.

5            MR. EMDEN:  Your Honor, yes.  But my understanding

6    is primarily that is to pay the attorneys' fees on

7    discussions with the Debtor's counsel.

8            THE COURT:  Correct.  Correct.  Which have to be

9    paid before the unsecured creditors are paid.

10           MR. EMDEN:  Right.  But that is coming from

11   retirement assets that would not otherwise be available to

12   pay out unsecured creditors.

13           THE COURT:  Right.  But if they weren't from

14   retirement assets they would come from the income of the

15   Debtor.

16           MR. EMDEN:  Yes, Your Honor, that's true.

17           THE COURT:  Okay.

18           MR. EMDEN:  Your Honor, I also believe that the

19   Debtor's argument for suffering irreparable harm is also

20   undermined by the fact that the Debtor has agreed to relief

21   from stay in the Gessler action.  While the Debtor has an

22   affirmative claim against Gessler, there's no reason that,

23   you know, based on the Debtor's logic it could not have gone

24   through the traditional claims adjudication process in an

25   attempt to resolve it through the bankruptcy process, you

1  know, 9019 motion, claims objection process, to ultimately

2  save money from having to litigate another action outside of

3  State Court.

4         I think what ultimately this really boils down to

5  is that the Debtor wants to stop the FCA case.  It wants to

6  prevent a liquidation of the United States' claims, it wants

7  to prevent potential reputational harm that the Debtor will

8  suffer if there is a jury verdict against him determining

9  that he accepted kickbacks for prescribing fentanyl and/or

10 that there was potential medically-unnecessary prescriptions

11 written by the Debtor, and, finally, also to avoid the legal

12 consequences that could flow from such a jury verdict,

13 including potential exclusion from participation in federal

14 health care programs, Your Honor.

15        The Debtor also has kind of raised the issue of

16 equitable mootness of its appeal today, Your Honor.

17 Ultimately the harm that it seems it's trying to prevent is

18 liquidation of the Government's claim; right?  It's a trial

19 on what the Government's claim is.  And that's going to

20 happen either in an adversary proceeding or in the FCA case.

21 So the ultimate idea that it might be equitably moot, it's

22 not like there's some harm that ultimately would be for --

23 but there's going to have to be a liquidation of the

24 Government's claim, Your Honor, and I think Your Honor made

25 that point in the order, that it's going to have to get

1  liquidated at one point or another.  So I would suggest,

2  Your Honor, that there has not been a showing of irreparable

3  harm that the Debtor will suffer.

4          A stay -- on the third factor, Your Honor, whether

5  a stay pending appeal, it would harm the United States and I

6  believe it would also harm the other creditors.  The stay

7  would delay the FCA case that has already been delayed once

8  by the filing of the bankruptcy case.  And since the entry

9  of the Court's order nearly a month ago and the subsequent

10  rescheduling of the trial, the United States has spent

11  considerable time preparing for trial, scheduling witnesses

12  to testify based on their availability, and is currently

13  preparing to depose certain witnesses identified by the

14  Debtor.  As such, the United States has once again spent

15  considerable time ramping up its efforts towards trial and

16  delay would further harm the United States.

17          Additionally, I would like to raise the point,

18  Your Honor, that an indefinite stay also poses a potential

19  risk to evidence that would be put on at trial in the FCA

20  case.  The further out that the case is from being heard,

21  there is a potential that witnesses' memories will fade.

22  Many of the witnesses are also elderly Medicare patients.

23  It's possible that based on a long enough stay that some of

24  these witnesses may no longer be available based on those

25  witnesses passing away.  So to say that there will be no

1  harm to the Government it is improper because there would be

2  potential evidential harm in the FCA case from an indefinite

3  stay.

4          A stay would also harm the United States, Your

5  Honor, because it would delay the liquidation of the United

6  States' claim and payment by the Debtor.  For the first time

7  we hear that the Debtor claims that there would be an

8  estimation of the United States's claim.  Well, that doesn't

9  really make sense, Your Honor.  The Debtor has not filed

10 such a motion.  By the time that that motion was briefed and

11 the Court set a hearing on it, we would already have a

12 liquidated claim from the District Court.  Why would we go

13 through a process of estimating a claim when we could have

14 an actual determination of the claim by the District Court.

15         And, you know, a motion to estimate the claim

16 would also necessarily entail discovery, additional expenses

17 that have already, you know, been undertaken in the FCA

18 case.  And why would we relitigate the case.  It completely

19 undermines the Debtor's point, Your Honor.

20         Further, the Debtor's Plan also provides that

21 there will be no distributions on any disputed claims.

22 Ultimately if the case is stayed, there wouldn't be a

23 payment out to the United States based on its claim.   And

24 further, any further delays in liquidating the United

25 States's claims would also delay potential payments to other

1   unsecured creditors.  The United States's claim is likely to
2   be of such a size that payments to other unsecured creditors
3   could not be made until that claim has been liquidated and
4   that would be unfair to other unsecured creditors of the
5   Debtor.  So for this reason, Your Honor, I do not believe
6   that the Debtor can show that there would be no harm to
7   third parties because there certainly would be harm to the
8   United States and to its other creditors.
9            On the fourth factor, Your Honor, public policy
10  does not support a stay pending appeal.  The Debtor argues
11  that public policy of judicial economy and efficiency favors
12  a stay pending appeal.  However, the Court has already
13  determined that the District Court has extensive knowledge
14  of the FCA case and the legal issues at play and that the
15  District Court is in the best position to quickly liquidate
16  the United States's claim.
17           The Court has also already determined that the
18  District Court proceeding is designed primarily to protect
19  the public safety and welfare by punishing and holding
20  accountable those who violate the FCA and improperly
21  exacerbate the national fentanyl crisis.  The Debtor
22  continues today even to argue that the opioid crisis is
23  fully the result of the illegal use, which is simply false
24  as the Court stated in its order.  The United States
25  attached -- the United States also attached an article from

1  The Washington Post from earlier this week which tied the
2  opioid crisis to addiction stemming from the improper
3  prescription of opioids, Your Honor.

4       This is -- Your Honor the Debtor also makes a
5  misrepresentation in its motion, alleges that it has never
6  faced any malpractice actions as a result of medically
7  unnecessary prescriptions of Subsys.  The United States
8  attached two complaints from the *Keys* case and the *Tibbetts*
9  *(ph)* case, in which plaintiffs have accused the Debtor
10  specifically of medical negligence based on the Debtor
11  prescribing the plaintiffs medically unnecessary
12  prescriptions of Subsys.

13       The Debtor also minimizes his prescriptions of
14  Subsys.  The United States is going to show at the FCA case
15  that nearly half of the Debtor's total reimbursements, about
16  $5 million, for prescription drugs from the Medicare and the
17  Tricare programs stemmed from Subsys.  Indeed, the Debtor
18  actually wrote his first prescription for Subsys less than
19  one week after he was nominated for Subsys -- less than one
20  week after he was nominated as a speaker for Subsys, and
21  wrote his first Medicare prescription the day after he
22  signed the speaker arrangement program with Insys.

23       Successful prosecution of the FCA case would serve
24  as a general deterrent, Your Honor, as Your Honor found in
25  the order in which it said, if the United States prevails at

1   trial, a judgment against the Debtor may also serve as a

2   deterrence to other healthcare professionals that may be

3   tempted by kickbacks from pharmaceutical companies and to

4   improperly prescribe opioid drugs.

5          Your Honor, I would submit that the Debtor cannot

6   establish any of the four elements necessary for a stay

7   pending appeal, and for that reason the United States

8   requests that the Court deny the motion and allow the FCA

9   case to continue as scheduled for October.

10          THE COURT:  Thank you, Mr. Emden.  Mr. Peterson,

11  would you like a brief rebuttal?

12          MR. PETERSON:  Yes, Your Honor.  Thank you.

13          Your Honor, with respect to the argument that, you

14  know, somehow we've -- we're acting inconsistently because

15  we agreed to the stay being lifted in the Gessler case, that

16  the reason for that is that we have an affirmative claim and

17  the only way that we could go forward with that affirmative

18  claim in that court was to agree that the stay would be

19  lifted for Gessler to continue its counterclaim.  So that's

20  why we agreed to that.  I think it is different because we

21  have an affirmative claim and the counterclaim was in

22  response to that.

23          Your Honor, the -- with respect to the motion to

24  estimate, that would be -- if Your Honor grants the stay, we

25  would file a motion to estimate, which would help avoid

1  delay in terms of getting to confirmation and distributions

2  being made under the Plan.  The issue with the malpractice

3  actions, those were settled without any admission of

4  liability.  I overstated that a bit in my papers and I

5  apologize for that, but they were settled without admission

6  of liability.  They're not ongoing.  There haven't been any

7  others filed so that's --

8            THE COURT:  So they're not creditors in this case?

9            MR. PETERSON:  They're not creditors.  There

10  were -- and that was my mis -- the two that are pending do

11  not relate to the Subsys issue.

12            THE COURT:  Okay.

13            MR. PETERSON:  These were prior ones that were

14  settled without -- by the carrier, so.  But I apologize

15  because I -- when I went back and looked at it, it was --

16            THE COURT:  So the two that are in the Debtor's

17  Schedules are unrelated to --

18            MR. PETERSON:  Unrelated, correct.

19            THE COURT:  Okay.

20            MR. PETERSON:  Correct.  So, Your Honor, we do,

21  you know, think that this is one of those cases when you

22  look at the -- all the factors, and the fact that there is a

23  procedure we can follow in the bankruptcy case to move

24  forward while the appeal is going forward.  We would ask

25  that you enter an order staying the -- staying execution on

1    your order pending the appeal.   The factors support it.

2    This is -- this case is different from the other cases that

3    hold that the police power exception applies.   The facts are

4    just different we think, and at the very least subject to

5    different interpretation by the appellate court.   So thank

6    you for setting this on an expedited basis.

7            THE COURT:   All right.  Would anybody else like to

8    comment on the matters that are pending before the Court?

9            MR. VAUGHN:   Your Honor, this is Matthew Vaughn

10   for Gessler Clinic.   We are the other significant unsecured

11   creditor.   And Gessler Clinic would just like to voice its

12   support for the Government's position.   One other -- a

13   couple other comments, I guess, that I would have with

14   regard to the dischargeability issues, that would have to

15   come back to the Bankruptcy Court.

16           The verdict in the FCA case would probably work

17   themselves out at far as the dischargeability issues through

18   a claim preclusion type argument.

19           We -- Gessler Clinic does intend to file a motion

20   to dismiss this case and an objection to confirmation.   So

21   it's my guess that confirmation will probably not likely

22   happen on the September 28th date because with the objection

23   it would be a non-consensual Plan.

24           THE COURT:   Okay.  Very good.  Would either side

25   like to respond to Mr. Vaughn's comments?  Mr. Peterson.

1          MR. PETERSON:  Your Honor, it's just -- this is

2    probably the first case where I've seen a junior credit --

3    somebody that's probably a junior creditor support the

4    Government going forward with getting ahead of that

5    creditor.  So I don't know what's going on between Gessler

6    and the Government, but that's surprising and shocking to me

7    that they would take that position, and I think it's

8    probably litigation gamesmanship that's going on.  And I

9    don't know what the basis for a motion to dismiss would be.

10   They haven't filed it yet.  We are already at confirmation

11   so -- and certainly we can confirm a non-consensual Plan in

12   a Subchapter V.  So that's all I have to say about that.

13          THE COURT:  Okay.  Thank you, Mr. Peterson.  And

14   Mr. Emden did you --

15          MR. EMDEN:  Your Honor, very briefly.  I would

16   just like to add that it's the United States's intention as

17   well, just so the Court is aware, that we intend to file a

18   motion to dismiss as well, and also an objection to Plan.  I

19   don't want to get into the, you know, the confirmation

20   issues here other than that there will be significant

21   evidentiary issues and that confirmation cannot occur on the

22   28th because the Court would likely have to set an

23   evidentiary hearing to determine those issues, Your Honor.

24          THE COURT:  Okay.

25          MR. EMDEN:  Thank you.

1           THE COURT:  Very good.  Thank you all.

2           First of all, I appreciate the good papers and the

3   response that were filed with regard to the motion for an

4   expedited stay pending appeal.  I think the parties agree on

5   the four factors that apply and should be applied by the

6   Court.

7           The first is likelihood of success on the merits.

8   The Court appreciates the difficulty of raising that

9   argument before the same Court that has already ruled

10  against you, and I understand that the rules are that if you

11  seek a stay pending appeal you do have to come to the trial

12  court before you go to the appellate court and the district

13  court.

14          I've considered the arguments on both sides of

15  likelihood of success of the Debtor's appeal.  And I think

16  with respect to the exception to the stay of 362(b)(4),

17  first I would say that the statute could and probably should

18  be clearer, but the language of the statute is what we have

19  and on its face it appears to permit almost all regulatory

20  or police actions by a governmental entity, other than the

21  enforcement of a monetary judgment.  And I remain persuaded

22  that this is a regulatory or police action.

23          But I have also indicated that, as Mr. Peterson

24  duly noted, that I did say that this was a close question

25  because there was no injunctive relief.  And in many of the

1   cases that were cited by the Government there was damages

2   and injunctive relief and it's not as clear as it might be,

3   but I also indicated that nevertheless under the facts and

4   circumstances of this case, that I would lift the automatic

5   stay for cause.

6          And with respect to the cause, this case was filed

7   on the eve of trial and there's not always cause when a case

8   is filed on the eve of trial.  But here it's not seriously

9   disputed that the parties are ready to move forward and the

10  costs of the pre-trial litigation at least have already been

11  incurred.

12         I don't discount the trial costs, those can be

13  significant.  But the Debtor is really suggesting that the

14  issues just simply be moved to this Court and we would incur

15  those additional litigation costs in estimating or

16  determining the claim, whichever would be appropriate.  And

17  I'm not saying one or the other would have been appropriate

18  but -- and to start sometime in the future.

19         There's a recent case by Judge Goldblatt out of

20  the Bankruptcy Court in Delaware.  It's *In re AP Orangevale,*

21  *LLC,* at 2023 Westlaw 5093819.  It was just decided August

22  8th of 2023.  And he observes that the concept of cause,

23  statutory cause, is inherently flexible and it has to be a

24  necessarily flexible inquiry.  But the case law does provide

25  some guidance when a bankruptcy petition is filed on the eve

1    of trial.  In this case he initially observes that the
2    debtor bears an extra special burden to come in and say why
3    cause is not -- does not exist to lift the stay.  And then
4    it concludes that the analysis boils down to a commonsense
5    judgment about whether it makes good sense to have the case
6    proceed in the court where it was pending as opposed to
7    being heard by the bankruptcy court.
8         Here it's hard to argue that this matter can be
9    resolved quicker in the District Court than it could be in
10   this court even if it were to engage in an estimation
11   process, which again I'm not saying would be the proper
12   process in this context.  And it's also clear that the
13   District Court is certainly a more suitable venue for a
14   False Claims Acts case.
15        Timely resolution is particularly important
16   because here the Debtor has affirmatively elected to proceed
17   under the speedy Subchapter V bankruptcy procedures.  And to
18   date, although Mr. Peterson promises he might file
19   something, today there's nothing in front of the Court where
20   -- that I can adjudicate at this point.  We would just
21   simply wait and then deal with it down the road.
22        Also, in going through the Schedules, I don't --
23   there doesn't appear to be a lot of creditors in this case.
24   The only undisputed unsecured creditor was American Express.
25   And I know the bar date is still open, but to date the only

1   proof of claim that's been filed is about a $6,000 claim for

2   estimated real estate taxes by Hillsborough County.  I think

3   that the Government's claim potentially dwarfs other claims,

4   perhaps even the Gessler claim that's represented by Mr.

5   Vaughn, I don't know one way or the other, but it's not

6   going away and it has to be litigated, and frankly, sooner

7   is better.

8          With respect to prejudice to the Debtor,

9   litigation costs are certainly a factor, but they're going

10  to be incurred one way or the other.  There may be more in

11  the District Court if it's a jury trial, but not so much

12  more as to offset the delay.  I also remain unpersuaded that

13  there will be significant nondischargeability litigation if

14  the United States obtains a judgment, as I discussed in my

15  original opinion, and obviously there will be none if Dr.

16  Lubin is able to prevail at trial next month.

17         The mootness issue is one that is always present.

18  In this case I think that Mr. Emden makes a good point that

19  the claim is going to have to be adjudicated eventually.  So

20  I don't know that the harm associated with a potential

21  mootness exists, but as I noted at the onset of my comments,

22  the Debtor will have a second opportunity to seek a stay

23  pending appeal before the District Court.  So my ruling

24  today is not the last word, it's just the initial word under

25  the Rules of Appellate Procedure for bankruptcy appeals.

1            With respect to prejudice to the Government.

2   Obviously the United States has had to gear up twice for

3   trial.  But more importantly, I'm persuaded by the witness

4   availability and recall.  The longer trials are put off, the

5   more difficult it is to gather witnesses and the more it's

6   difficult to recall what actually had in the past.

7            Finally, with respect to the public interest.

8   Usually this is typically not an important factor in private

9   disputes that arise in bankruptcy appeals, but when the

10  public interest such as we have is present, this factor has

11  to be -- has to weigh in favor of the Government by virtue

12  of Congress's recognition that the police and regulatory

13  matters are excepted from the automatic stay.  I've also

14  read and considered Judge Barber's comments that this

15  litigation is just about money.

16            On this I think I have a little bit of an

17  advantage over him, as does the Government, because we have

18  been able to see the schedule of assets and statements of

19  affairs that have been filed by the Debtor.  Frankly, a lot

20  of the assets are in the Debtor's -- by tenants by the

21  entireties are in the Debtor's name with his spouse who is

22  not a defendant in the action and would be exempt.  There

23  are lots of retirement assets that are not going to be

24  possible.  I'm sure the Government has looked at this.  So

25  if the Government is pursuing the Debtor expecting a huge

1  payday, I know they know that they're going to be sorely

2  disappointed.  That's not going to happen based upon what

3  has been filed under oath in this court.  And frankly, if

4  this litigation was just about money, I am quite certain

5  that it would have been resolved by this point.  The public

6  interest factor thus weighs in favor of denying the stay

7  pending appeal.

8           Now that said, I considered a temporary stay to

9  allow the Debtor to go to District Court to seek a stay.

10  Usually that's an easier process than going before the judge

11  that has ruled against you.  But here I'm concerned that if

12  I do that, that the patient depositions which are -- have

13  been allowed by Judge Barber might have to be continued and

14  that might serve a basis to have to continue the trial, and

15  I think it's in everybody's best interest for this trial to

16  go forward.  I think that the United States needs to present

17  its case and I believe that Dr. Lubin needs to present his

18  defense and potentially clear his name, that this matter

19  just needs to be resolved.  And under Subchapter V, I think

20  I have to err on the side of speed.

21          So I'm going to deny the stay pending appeal.  Mr.

22  Peterson, why don't you just give me an order.  Just say for

23  the reasons articulated in court it's denied, and you're

24  free to go to the District Court to seek a stay.

25          MR. PETERSON:  Thanks, Your Honor.

1          THE COURT:  Very good.  Thank you all.  We'll be
2    in recess then?
3          COURTROOM DEPUTY:  Yes.
4          THE COURT:  Thank you.
5          COURTROOM DEPUTY:  All rise.
6          (Whereupon, proceedings adjourned at 11:42 a.m.)
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

CERTIFICATE


            I, Gretchen L. Schultz, Certified Electronic

Reporter and Transcriber, hereby certify that the foregoing

is the official transcript, prepared to the best degree

possible from the digital audio recording provided by the

court.

            I further certify that I am neither counsel for,

nor related to, nor an employee of any of the parties to the

action in which this hearing was taken.

            I further certify that I have no personal interest

in the outcome of the action.

            SIGNED this 22nd day of September, 2023.



            _____

            GRETCHEN L. SCHULTZ, CER 3573
            Transcriber