UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

In Re:

EDWARD LUBIN                                  Case No. 8:23-bk-03168-RCT
                                             Chapter 11

      Debtor.

_____/

### DEBTOR'S MOTION TO APPROVE COMPROMISE OF CONTROVERSY BY AND BETWEEN THE DEBTOR AND THE UNITED STATES

Pursuant to Fed. R. Bank. P. 9019 and Local Rule 9019-1, Debtor, EDWARD LUBIN ("Debtor"), by and through his undersigned counsel, hereby moves this Court for an order approving the compromise between the Debtor and the United States of America, acting through the United States Department of Justice and on behalf of the Office of Inspector General of the Department of Health and Human Services; and the Defense Health Agency, acting on behalf of the TRICARE program (collectively, the "United States")[1]. In support of this Motion, the Debtor states as follows:

### Background

1.      On July 26, 2023 ("Petition Date"), the Debtor filed a Voluntary Petition for Relief under Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code"), Subchapter V, Small Business Debtor Reorganization.

2.      On August 15, 2023, the Debtor filed his Chapter 11 Small Business Subchapter V Plan (Doc. No. 23) ("Plan").

---

[1] Except as otherwise defined herein, capitalized terms shall have the same meaning ascribed to them in the Settlement Agreement.

3.      The Court has scheduled a trial to determine confirmation of the Debtor's Plan on December 11, 2023 at 9:30 A.M.

**The Dispute**

4.      The Debtor is a medical doctor currently practicing in Tampa, Florida. From in or about 2013 through in or about September 2016, the Debtor practiced at the Gessler Clinic Professional Association in Winter Haven, Florida.

5.      On September 21, 2021, the United States filed an action against The Debtor in the Tampa Division of the United States District Court for the Middle District of Florida captioned *United States v. Lubin*, Case No. 8:21-cv-02231 (the "Civil Action").

6.      The United States contends that the Debtor submitted or caused to be submitted claims for payment to the Medicare Program, Title XVIII of the Social Security Act, 42 U.S.C. §§ 1395-1395lll ("Medicare") and the TRICARE Program, 10 U.S.C. §§ 1071-1110b ("TRICARE").

7.      The United States contends that it has certain civil claims against the Debtor arising from the submission, or causing the submission, of false claims to Medicare and TRICARE during the time period from August 1, 2013, through October 31, 2016.

8.      The parties engaged in settlement discussions and have now reached a reasonable resolution of all disputes. In light of the facts of this case, the likely costs of litigation, and the time involved in trying this matter and amounts at issue, the Debtor and the United States agree that the settlement set forth herein is in the best interest of the Parties and the estate. A copy of the Settlement Agreement (the "Settlement Agreement") is attached hereto as Exhibit A and by reference incorporated herein.

## Summary of the Compromise

9.      The Debtor shall pay to the United States one million five hundred thousand dollars ($1,500,000.00) ("Settlement Amount"), which constitutes restitution to the United States. Payment shall be made by electronic funds transfer pursuant to written instructions to be provided by the Office of the United States Attorney for the Middle District of Florida.  Payments shall be made as follows:

a.      Debtor shall pay to the United States $187,500.00, no later than December 31, 2023.

b.      Debtor shall pay to the United States $500,000.00, no later than the earlier of (1) October 15, 2024, or (2) thirty days after any distribution paid to the Debtor pursuant to his ownership interest in CMG Corporation resulting from the anticipated sale of CMG Corporation.

c.      Debtor shall pay to the United States $250,000.00, no later than October 15, 2024.

d.      Debtor shall pay the remaining $562,500.00 of the Settlement Amount to the United States through three annual payments of $187,500.00, plus interest ("Annual Installment Payments").  The Debtor shall pay each of the Annual Installment Payments on or before the following dates: October 15, 2025; October 15, 2026; October 15, 2027, until paid in full.  If the Debtor prepays any portion of the Annual Installment Payments on or before October 15, 2024, the Debtor shall not pay any interest on those payments. Any portion of the Annual Installment Payments that the Debtor does not prepay on or before October 15, 2024, shall accrue interest at a rate of 4.75% per annum from the Effective Date of this Agreement.

10.     Subject to the exceptions in the Settlement Agreement (concerning reserved claims), and upon the United States' receipt of the Settlement Amount, plus interest due as set forth in the Settlement Agreement, the United States releases the Debtor from any civil or administrative monetary claim the United States has for the Covered Conduct under the False Claims Act, 31 U.S.C. §§ 3729-3733; the Civil Monetary Penalties Law, 42 U.S.C. § 1320a-7a; the Program Fraud Civil Remedies Act, 31 U.S.C. §§ 3801-3812; or the common law theories of payment by mistake, unjust enrichment, and fraud.

11.     In consideration of the obligations of the Debtor set forth in the Settlement Agreement, and upon the United States' receipt of full payment of the Settlement Amount, plus interest due under the Settlement Agreement, DHA shall release and refrain from instituting, directing, or maintaining any administrative action seeking exclusion from the TRICARE Program against the Debtor under 32 C.F.R. § 199.9 for the Covered Conduct, except as reserved in the Settlement Agreement.  DHA expressly reserves authority to exclude the Debtor from the TRICARE Program under 32 C.F.R. §§ 199.9 (f)(1)(i)(A), (f)(1)(i)(B), and (f)(1)(iii) (mandatory exclusion), based upon the Covered Conduct.  Nothing in the Settlement Agreement precludes DHA or the TRICARE Program from taking action against entities or persons, or for conduct and practices, for which claims have been reserved as set forth in the Settlement Agreement.

12.     Notwithstanding the release given in the Settlement Agreement or any other term of the Settlement Agreement, the following claims and rights of the United States are specifically reserved and are not released:

      a.     Any liability arising under Title 26, U.S. Code (Internal Revenue Code);

      b.     Any criminal liability for any conduct other than for the covered conduct;

      c.     Except as explicitly stated in the Settlement Agreement, any administrative liability or enforcement right, including mandatory or permissive exclusion from Federal health care programs;

      d.     Any liability to the United States (or its agencies) for any conduct other than the Covered Conduct;

      e.     Any liability based upon obligations created by the Settlement Agreement.

13.     The Debtor fully and finally releases the United States, its agencies, officers, agents, employees, and servants, from any claims (including attorney's fees, costs, and expenses of every kind and however denominated) that the Debtor has asserted, could have asserted, or may assert in the future against the United States, and its agencies, officers, agents, employees, and servants related to the Covered Conduct and the United States' investigation and prosecution thereof.

14.     The Settlement Amount shall not be decreased as a result of the denial of claims for payment now being withheld from payment by any Medicare contractor (e.g., Medicare Administrative Contractor, fiscal intermediary, carrier), TRICARE carrier or payer, or any state payer, related to the Covered Conduct; and the Debtor agrees not to resubmit to any Medicare contractor, TRICARE carrier or payer, or any state payer any previously denied claims related to the Covered Conduct, agrees not to appeal any such denials of claims, and agrees to withdraw any such pending appeals.

15.     In the event that the Debtor fails to pay the Settlement Amount as provided in the payment schedule set forth in the Settlement Agreement, the Debtor shall be in Default of the Debtor's payment obligations ("Default").  In the occurrence of Default:

      a.     The United States will provide a written Notice of Default, and the Debtor shall have an opportunity to cure such Default within seven (7) calendar days from the date of receipt of the Notice of Default by making the payment due under the payment schedule and paying any additional interest accruing under the Agreement up to the date of payment.  Notice of Default will be delivered to Defendant, or to such other representative as the Debtor shall designate in advance in writing.  If the Debtor fails to cure the Default within seven (7) calendar days of receiving the Notice of Default and in the absence of an agreement with the United States to a modified payment schedule ("Uncured Default"), the remaining unpaid balance of the Settlement Amount shall become immediately due and payable.

b.      In the event of Uncured Default, OIG-HHS may exclude the Debtor from participating in all Federal health care programs until the Debtor pays the Settlement Amount, with interest, as set forth above (Exclusion for Default). OIG-HHS will provide written notice of any such exclusion to the Debtor. The Debtor waives any further notice of the exclusion under 42 U.S.C. § 1320a-7(b)(7). The Debtor will not be reinstated unless and until OIG-HHS approves such request for reinstatement. The option for Exclusion for Default is in addition to, and not in lieu of, the options identified in this Agreement or otherwise available.

16.     The Debtor agrees that the Settlement Amount of $1,500,000.00 is non-dischargeable under 11 U.S.C. §§ 523(a)(2) and (a)(7) in the Bankruptcy Case and any future bankruptcy cases filed by the Debtor before payment is made in full to the United States under the Settlement Agreement.

17.     Within ten business days of the Bankruptcy Court entering an Order approving the Agreement (1) the United States shall file a Notice withdrawing the United States' Objection to the Debtor's Subchapter V Plan of Reorganization (Bankruptcy Case, Docket Entry 90); (2) the United States shall file a Notice that the United States withdraws its joinder in the United States of America and Gessler Clinic's Joint Motion to Dismiss Bankruptcy Petition or Convert to Chapter Petition for Cause Due to Bad Faith Filing (Bankruptcy Case, Docket Entry 99); and (3) so long as the Debtor's Bankruptcy Plan includes the applicable terms of the Settlement Agreement, the United States will seek authority to vote to accept the Debtor's Bankruptcy Plan under 11 U.S.C. § 1126(a); however, the United States' failure to obtain authority to vote to accept Debtor's Bankruptcy Plan shall not impair or effect the Settlement Agreement.

18.     Upon receipt of the payment described in the Settlement Agreement, the Parties shall promptly sign and file in the Civil Action a Joint Stipulation of Dismissal of the Civil Action pursuant to Rule 41(a)(1)(A)(ii). Such Dismissal shall be subject to the terms of the Settlement Agreement.

## Legal Argument and Citation to Authority

19.     Bankruptcy Rule 9019(a) provides that: "On motion by the trustee and after notice and a hearing, the court may approve a compromise or settlement. Notice shall be given to creditors, the United States trustee, the Debtor, and indenture trustees as provided in Rule 2002 and to any other entity as the court may direct." Fed. R. Bankr. P. 9019(a).

20.     Approval of a settlement in a bankruptcy proceeding is within the sole discretion of the Court. *In re Arrow Air*, 85 BR 891 (Bankr. S.D. Fla. 1988). The standards for approval are well settled and require the Court to inquire into the reasonableness of the proposed settlement. *See, e.g., Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson*,

390 U.S. 414, 424 (1968); *In re W.T. Grant Co.*, 699 F.2d 599, 608 (2d Cir.), *cert. denied, sub nom., Cosoff v. Rodman*, 464 U.S. 822 (1983); *Florida Trailer and Equip. Co. v. Deal*, 284 F.2d 567, 571 (5th Cir. 1960). The inquiry need only determine whether the settlement falls below the lowest point of the range of reasonableness. *See W.T. Grant Co.*, 699 F.2d at 608.

21.     In the Eleventh Circuit, the Court must consider the following factors in determining whether to approve the settlement (i) the probability of success in the litigation; (ii) the difficulties, if any, to be encountered in the matter of collection; (iii) the complexity of the litigation involved and the expense, inconvenience and delay necessarily attending it; and (iv) the paramount interest of the creditors and proper deference to their reasonable views in the premises. *In re Justice Oaks, II, Ltd.*, 898 F.2d 1544, 1549 (11th Cir. 1990), *cert. denied*, 498 U.S. 959 (1990) (establishing the legal standard for approval of settlements). *See also In re Martin,* 91 F.3d 389 (3rd Cir. 1996); *In re Louise's Inc.,* 211 B.R. 798 (D. Del. 1997).

22.     In evaluating the settlement reached, this Court—

> need not rest its decision whether to approve a settlement upon a resolution of ultimate factual and legal issues which underlie the disputes that are proposed to be compromised. *In re Teltronics Services, Inc.*, *supra*. In a Fifth Circuit decision which is binding on this Court, *Florida Trailer and Equipment Company v. Deal*, 284 F.2d 567, 571 (5th Cir.1960), the Court stated:
>
> Of course, the approval of a proposed settlement does not depend upon establishing as a matter of legal certainty that the subject claim or counterclaim is or is not worthless or valuable. The probable outcome in the event of litigation, the relative advantages and disadvantages are, of course, relevant factors for evaluation. *But the very uncertainties of litigation, as well as the avoidance of wasteful litigation and expense, lay behind the Congressional infusion of a power to compromise. This is a recognition of the policy of the law generally to encourage settlements. This could hardly be achieved if the test on hearing for approval meant establishing success or failure to a certainty. Parties would be hesitant to explore the likelihood of settlement apprehensive as they would then be that the application for approval would necessarily result in a judicial determination that there was no escape from liability or no hope of*

> *recovery and hence no basis for a compromise*. Thus, this Court
> need not resolve each disputed matter in determining the propriety
> of the settlement; rather, the Court may, and should, make a
> pragmatic decision on the basis of all equitable factors.

*In re Holywell Corp.*, 93 B.R. 291 (Bankr. S.D. Fla. 1988) (emphasis in original).

23.    In the present case, the Settlement Agreement satisfies the Justice Oaks factors. With respect to the first factor, the probability of success in the litigation, both sides feel strongly about their cases.  However, as with all litigation, there is risk, and this risk is the reason that the both sides agreed to enter into the settlement.  With respect to the second Justice Oaks factor, the Government would have a difficult time collecting on any judgment against the Debtor. Accordingly, the Government agreed to settle the matter at a substantial discount.  With respect to the third Justice Oaks factor, the litigation is complex and would have taken approximately eight days of trial time, which would have resulted in huge expense and inconvenience for all involved. Finally, with respect to the fourth Justice Oaks factor, the paramount interests of the creditors support this settlement because it will result in a reduction in litigation expense, and paves the way for the filing of a plan supported by the Government.

24.    Finally, the compromise was developed and negotiated with the aid of knowledgeable and competent counsel with experience in complex litigation and bankruptcy issues.

25.    Based upon the foregoing, the Debtor respectfully submits that the compromise falls well within the "range of reasonableness" and satisfies the legal standard set forth in *Justice Oaks*. Accordingly, the Debtor requests that the compromise be approved.

**WHEREFORE**, the Debtor respectfully requests this Court to enter an Order (i) approving the terms of compromise described herein; (ii) authorizing the Debtor to take any and all action

and execute any and all documents necessary to effectuate the terms of the compromise; and (iii) granting any additional relief as the Court deems appropriate.

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that the foregoing **Motion** has been furnished either by the Court's CM/ECF system or by regular U. S. Mail to the **Office of the U.S. States Trustee**, 501 E. Polk St., Ste. 1200, Tampa, FL 33602; **Edward Lubin,** 12524 Blazing Sar Drive, Tampa, FL 33626 and all parties listed on attached Matrix on October 27, 2023.

*/s/ Edward J. Peterson*
Edward J. Peterson (FBN 14612)
JOHNSON, POPE, BOKOR, RUPPEL & BURNS, LLP
401 E Jackson Street, Suite 3100
Tampa, Florida 33602
Telephone: (813) 225-2500
Email: edwardp@jpfirm.com
Attorneys for Debtor

# EXHIBIT A

## SETTLEMENT AGREEMENT

This Settlement Agreement ("Agreement") is entered into among the United States of America, acting through the United States Department of Justice and on behalf of the Office of Inspector General (OIG-HHS) of the Department of Health and Human Services (HHS); the Defense Health Agency (DHA), acting on behalf of the TRICARE program; (collectively, the "United States"), and Edward Lubin ("Defendant") (hereafter collectively referred to as "the Parties"), through their authorized representatives.

## RECITALS

A.      Defendant is a medical doctor currently practicing in Tampa, Florida. From in or about 2013 through in or about September 2016, Dr. Lubin practiced at the Gessler Clinic Professional Association in Winter Haven, Florida.

B.      On September 21, 2021, the United States filed an action against Defendant in the Tampa Division of the United States District Court for the Middle District of Florida captioned *United States v. Lubin*, Case No. 8:21-cv-02231 (the "Civil Action").

C.      On July 26, 2023, Defendant filed a voluntary petition for relief under Chapter 11 of the United States Bankruptcy Code, commencing a bankruptcy case styled *In re Edward Lubin*, Case No. 8:23-bk-03168 (the "Bankruptcy Case"), in the Tampa Division of the United States Bankruptcy Court for the Middle District of Florida (hereinafter, the "Bankruptcy Court").

D.      The United States contends that Defendant submitted or caused to be submitted claims for payment to the Medicare Program, Title XVIII of the Social Security Act, 42 U.S.C. §§ 1395-1395lll ("Medicare") and the TRICARE Program, 10 U.S.C. §§ 1071-1110b ("TRICARE").

E.      The United States contends that it has certain civil claims against Defendant arising from the submission, or causing the submission, of false claims to Medicare and

TRICARE during the time period from August 1, 2013, through October 31, 2016. Defendant wrote prescriptions for Subsys, a fentanyl spray manufactured by Insys Therapeutics, Inc. ("Insys"). In the Civil Action, the United States alleges that Defendant participated in Insys' sham speaker program, in which he was paid to purportedly speak at sham "events" that either lasted a few minutes, never occurred, or had repeat attendees, including seven sham "events" with the same single attendee, despite the lack of any rationale to present to the same person more than one time. The United States alleges that, once he became an Insys speaker: (1) Defendant immediately began prescribing Subsys in exchange for speaker fees regardless of medical necessity; (2) over the course of three years, Insys paid Defendant $159,580.00; and (3) during this time period, Defendant caused the submission of prescriptions of Subsys that were paid by Medicare and TRICARE. Accordingly, Defendant knowingly and willfully received remuneration from Insys in return for prescribing Subsys in violation of the federal anti-kickback statute and caused the submission of claims that were tainted by kickbacks and/or medically unnecessary.

The United States contends that it has certain civil claims against Defendant, arising from the conduct described in paragraph E, above, which is referred to below as the "Covered Conduct."

F.      Defendant denies as untrue the allegations made by the United States as described above.

G.      This Agreement is neither an admission of liability by Defendant nor a concession by the United States that its claims are not well founded.

To avoid the delay, uncertainty, inconvenience, and expense of protracted litigation of the above claims, and in consideration of the mutual promises and obligations of this Agreement, the Parties agree and covenant as follows:

2

## TERMS AND CONDITIONS

1.      Defendant shall pay to the United States one million five hundred thousand

dollars ($1,500,000.00) ("Settlement Amount"), which constitutes restitution to the United

States. Payment shall be made by electronic funds transfer pursuant to written instructions to be

provided by the Office of the United States Attorney for the Middle District of Florida.

Payments shall be made as follows:

      a.      Defendant shall pay to the United States $187,500.00, no later than

December 31, 2023;

      b.      Defendant shall pay to the United States $500,000.00, no later than the

earlier of (1) October 15, 2024, or (2) thirty days after any distribution paid to Defendant

pursuant to his ownership interest in CMG Corporation resulting from the anticipated sale of

CMG Corporation.

      c.      Defendant shall pay to the United States $250,000.00, no later than

October 15, 2024;

      d.      Defendant shall pay the remaining $562,500.00 of the Settlement Amount

to the United States through three annual payments of $187,500.00, plus interest ("Annual

Installment Payments"). Defendant shall pay each of the Annual Installment Payments on or

before the following dates: October 15, 2025; October 15, 2026; October 15, 2027, until paid in

full. If the Defendant prepays any portion of the Annual Installment Payments on or before

October 15, 2024, the Defendant shall not pay any interest on those payments. Any portion of

the Annual Installment Payments that the Defendant does not prepay on or before October 15,

2024, shall accrue interest at a rate of 4.75% per annum from the Effective Date of this

Agreement.

3

2.    Subject to the exceptions in Paragraph 4 (concerning reserved claims) below, and upon the United States' receipt of the Settlement Amount, plus interest due under Paragraph 1(d), the United States releases Defendant from any civil or administrative monetary claim the United States has for the Covered Conduct under the False Claims Act, 31 U.S.C. §§ 3729-3733; the Civil Monetary Penalties Law, 42 U.S.C. § 1320a-7a; the Program Fraud Civil Remedies Act, 31 U.S.C. §§ 3801-3812; or the common law theories of payment by mistake, unjust enrichment, and fraud.

3.    In consideration of the obligations of Defendant set forth in this Agreement, and upon the United States' receipt of full payment of the Settlement Amount, plus interest due under Paragraph 1(d), DHA shall release and refrain from instituting, directing, or maintaining any administrative action seeking exclusion from the TRICARE Program against Defendant under 32 C.F.R. § 199.9 for the Covered Conduct, except as reserved in this paragraph and in Paragraph 4 (concerning reserved claims), below.  DHA expressly reserves authority to exclude Defendant from the TRICARE Program under 32 C.F.R. §§ 199.9 (f)(1)(i)(A), (f)(1)(i)(B), and (f)(1)(iii) (mandatory exclusion), based upon the Covered Conduct.  Nothing in this paragraph precludes DHA or the TRICARE Program from taking action against entities or persons, or for conduct and practices, for which claims have been reserved in Paragraph 4, below.

4.    Notwithstanding the releases given in Paragraph 2 and Paragraph 3 of this Agreement, or any other term of this Agreement, the following claims and rights of the United States are specifically reserved and are not released:

a.    Any liability arising under Title 26, U.S. Code (Internal Revenue Code);

b.    Any criminal liability for which the statute of limitations has not expired;

4

    c.      Except as explicitly stated in this Agreement, any administrative liability or enforcement right, including mandatory or permissive exclusion from Federal health care programs;

    d.      Any liability to the United States (or its agencies) for any conduct other than the Covered Conduct;

    e.      Any liability based upon obligations created by this Agreement;

5.      Defendant waives and shall not assert any defenses Defendant may have to any administrative action relating to the Covered Conduct that may be based in whole or in part on a contention that, under the Double Jeopardy Clause in the Fifth Amendment of the Constitution, or under the Excessive Fines Clause in the Eighth Amendment of the Constitution, this Agreement bars a remedy sought in such administrative action.

6.      Defendant fully and finally releases the United States, its agencies, officers, agents, employees, and servants, from any claims (including attorney's fees, costs, and expenses of every kind and however denominated) that Defendant has asserted, could have asserted, or may assert in the future against the United States, and its agencies, officers, agents, employees, and servants related to the Covered Conduct and the United States' investigation and prosecution thereof.

7.      The Settlement Amount shall not be decreased as a result of the denial of claims for payment now being withheld from payment by any Medicare contractor (e.g., Medicare Administrative Contractor, fiscal intermediary, carrier), TRICARE carrier or payer, or any state payer, related to the Covered Conduct; and Defendant agrees not to resubmit to any Medicare contractor, TRICARE carrier or payer, or any state payer any previously denied claims related to the Covered Conduct, agrees not to appeal any such denials of claims, and agrees to withdraw any such pending appeals.

8.    This Agreement is intended to be for the benefit of the Parties only. The Parties do not release any claims against any other person or entity, except to the extent provided for in Paragraph 9 (waiver for beneficiaries paragraph), below.

9.    Defendant agrees that he waives and shall not seek payment for any of the health care billings covered by this Agreement from any health care beneficiaries or their parents, sponsors, legally responsible individuals, or third party payors based upon the claims defined as Covered Conduct.

10.    In the event that Defendant fails to pay the Settlement Amount as provided in the payment schedule set forth in Paragraph 1 above, Defendant shall be in Default of Defendant's payment obligations ("Default"). In the occurrence of Default:

a.    The United States will provide a written Notice of Default, and Defendant shall have an opportunity to cure such Default within seven (7) calendar days from the date of receipt of the Notice of Default by making the payment due under the payment schedule and paying any additional interest accruing under the Agreement up to the date of payment. Notice of Default will be delivered to Defendant, or to such other representative as Defendant shall designate in advance in writing. If Defendant fails to cure the Default within seven (7) calendar days of receiving the Notice of Default and in the absence of an agreement with the United States to a modified payment schedule ("Uncured Default"), the remaining unpaid balance of the Settlement Amount shall become immediately due and payable, and interest on the remaining unpaid balance shall thereafter accrue at the rate of 4.75% per annum from the date of default.

b.    In the event of Uncured Default, Defendant agrees that the United States, at its sole discretion, may (i) retain any payments previously made, rescind this Agreement and pursue the Civil Action or bring any civil and/or administrative claim, action, or proceeding against Defendant for the claims that would otherwise be covered by the releases provided in

Paragraph 2 and Paragraph 3 above, with any recovery reduced by the amount of any payments previously made by Defendant to the United States under this Agreement; (ii) take any action to enforce this Agreement in a new action or by reinstating the Civil Action; (iii) offset the remaining unpaid balance from any amounts due and owing to Defendant by any department, agency, or agent of the United States at the time of Default or subsequently; and/or (iv) exercise any other right granted by law, or under the terms of this Agreement, or recognizable at common law or in equity. The United States shall be entitled to any other rights granted by law or in equity by reason of Default, including referral of this matter for private collection. In the event the United States pursues a collection action, the United States is entitled to seek a ten-percent (10%) surcharge of the amount collected, as authorized by 28 U.S.C. § 3011(a).

          c.     In the event of Uncured Default, OIG-HHS may exclude Defendant from participating in all Federal health care programs until Defendant pays the Settlement Amount, with interest, as set forth above (Exclusion for Default). OIG-HHS will provide written notice of any such exclusion to Defendant. Defendant waives any further notice of the exclusion under 42 U.S.C. § 1320a-7(b)(7) and agrees not to contest such exclusion either administratively or in any state or federal court. Reinstatement to program participation is not automatic. If at the end of the period of exclusion, Defendant wishes to apply for reinstatement, he must submit a written request for reinstatement to OIG-HHS in accordance with the provisions of 42 C.F.R. §§ 1001.3001-.3005. Defendant will not be reinstated unless and until OIG-HHS approves such request for reinstatement. The option for Exclusion for Default is in addition to, and not in lieu of, the options identified in this Agreement or otherwise available.

          11.     Defendant agrees that the Settlement Amount is non-dischargeable under 11 U.S.C. §§ 523(a)(2) and (a)(7) in the Bankruptcy Case and any future bankruptcy cases filed by the Defendant.

12.     Within ten business days of the Effective Date of this Agreement, Defendant shall
file in the Bankruptcy Court a Joint Motion to Approve Agreement. The Joint Motion shall
submit this Agreement for approval by the Bankruptcy Court. Within ten business days of the
Bankruptcy Court entering an Order approving the Agreement (1) the United States shall file a
Notice withdrawing the United States' Objection to the Debtor's Subchapter V Plan of
Reorganization (Bankruptcy Case, Docket Entry 90); (2) the United States shall file a Notice that
the United States withdraws its joinder in the United States of America and Gessler Clinic's Joint
Motion to Dismiss Bankruptcy Petition or Convert to Chapter Petition for Cause Due to Bad
Faith Filing (Bankruptcy Case, Docket Entry 99); and (3) so long as the Defendant's Bankruptcy
Plan includes the applicable terms of this Agreement, the United States will seek authority to
vote to accept Defendant's Bankruptcy Plan under 11 U.S.C. § 1126(a); however, the United
States' failure to obtain authority to vote to accept Defendant's Bankruptcy Plan shall not impair
or effect this Agreement.

13.     Upon receipt of the payment described in Paragraph 1(a), above, the Parties shall
promptly sign and file in the Civil Action a Joint Stipulation of Dismissal of the Civil Action
pursuant to Rule 41(a)(1)(A)(ii). Such Dismissal shall be subject to the terms of the Agreement.

14.     Each Party shall bear its own legal and other costs incurred in connection with
this matter, including the preparation and performance of this Agreement.

15.     Each Party and signatory to this Agreement represents that it freely and
voluntarily enters into this Agreement without any degree of duress or compulsion.

16.     This Agreement is governed by the laws of the United States. The exclusive
venue for any dispute relating to this Agreement is the United States District Court for the
Middle District of Florida. For purposes of construing this Agreement, this Agreement shall be

deemed to have been drafted by all Parties to this Agreement and shall not, therefore, be construed against any Party for that reason in any subsequent dispute.

17.    This Agreement constitutes the complete agreement between the Parties. This Agreement may not be amended except by written consent of the Parties.

18.    The undersigned counsel represent and warrant that they are fully authorized to execute this Agreement on behalf of the persons and entities indicated below.

19.    This Agreement may be executed in counterparts, each of which constitutes an original and all of which constitute one and the same Agreement.

20.    This Agreement is binding on Defendant's successors, transferees, heirs, and assigns.

21.    All Parties consent to the United States' disclosure of this Agreement, and information about this Agreement, to the public.

22.    This Agreement is effective on the date of signature of the last signatory to the Agreement (Effective Date of this Agreement).  Facsimiles and electronic transmissions of signatures shall constitute acceptable, binding signatures for purposes of this Agreement.

**THE UNITED STATES OF AMERICA**

DATED: 10/13/23    BY: _____

Jeremy K. Bloor
Assistant United States Attorney
Middle District of Florida

DATED: _____    BY: _____

LISA RE    Digitally signed by
LISA RE
Date: 2023.10.13
10:15:22 -04'00'

Lisa M. Re
Assistant Inspector General for Legal Affairs
Office of Counsel to the Inspector General
Office of Inspector General
United States Department of Health and Human Services

DATED: _____    BY: _____

SALVATORE M. MAIDA
General Counsel
Defense Health Agency
United States Department of Defense

10

## THE UNITED STATES OF AMERICA

DATED: _____    BY:    _____
Jeremy R. Bloor
Assistant United States Attorney
Middle District of Florida


DATED: _____    BY:    _____
Lisa M. Re
Assistant Inspector General for Legal Affairs
Office of Counsel to the Inspector General
Office of Inspector General
United States Department of Health and Human Services


DATED: 10/12/2023    BY:    BLEY.PAUL.NICHO  Digitally signed by
                             BLEY.PAUL.NICHOLAS.109987382
                             LAS.1099873821    1
                                               Date: 2023.10.12 16:39:03 -04'00'
                    for      _____
                             SALVATORE M. MAIDA
                             General Counsel
                             Defense Health Agency
                             United States Department of Defense

10

**EDWARD LUBIN - DEFENDANT**

DATED: _10/12/2023_    BY: _____
Edward Lubin, M.D.

DATED: _10/12/2023_    BY: _____
Dale Sisco
Robert Aranda
Counsel for Edward Lubin

11

Label Matrix for local noticing
113A-8
Case 8:23-bk-03168-RCT
Middle District of Florida
Tampa
Fri Oct 27 15:11:14 EDT 2023

American Express
PO Box 981535
El Paso, TX 79998-1535

American Express National Bank
c/o Becket and Lee LLP
PO Box 3001
Malvern  PA 19355-0701

Robert J Aranda
Valenti Campbell Trohn Tamayo &Aranda PA
1701 South Florida Avenue
Lakeland, FL 33803-2262

Christopher Joe Hunt
c/o Frederick Fritz, Esq.
101 E Kennedy Blvd #3030
Tampa, FL 33602-5150

Department of Revenue
PO Box 6668
Tallahassee FL 32314-6668

(p)KATHLEEN L  DISANTO  TRUSTEE
BUSH ROSS P A
PO BOX 3913
TAMPA FL 33601-3913

Dominick Intagliato
c/o J. Clancey Bounds, Esq.
1751 N Park Ave
Maitland, FL 32751-6534

Dominick Intagliato
c/o James C. Moon, Esq.
Meland Budwick, P.A.
200 South Biscayne Blvd., Ste 3200
Miami, FL 33131-5323

Dominick Intagliato
c/o James C. Moon, Esquire
3200 Southeast Financial Center
200 South Biscayne Boulevard
Miami, Florida 33131-5340

Teresa Marie Dorr
Office of the United States Trustee
501 E. Polk Street, Suite 1200
Tampa, FL 33602-3945

Christopher J Emden
Assistant United States Attorney
Middle District of Florida
400 North Tampa Street, Suite 3200
Tampa, FL 33602-4798

Brian T FitzGerald
Hillsborough County Attorney
Senior Assistant County Attorney
PO Box 1110
Tampa, FL 33601-1110

Florida Dept of Revenue
P.O. Box 6668
Tallahassee, FL 32314-6668

Gessler Clinic, P.A.
c/o Matthew J. Vaughn
PO Box 24628
Lakeland, FL 33802-4628

Gessler Clinic, PA
635 First St. N
Winter Haven, FL 33881-4191

(p)MANLEY DEAS KOCHALSKI LLC
ATTN BANKRUPTCY DEPT
1555 LAKE SHORE DRIVE
COLUMBUS OH 43204-3825

Hillsborough County Tax
Collector
601 E Kennedy Blvd.
14th Floor
Tampa, FL 33602-4932

Hillsborough County Tax Collector
c/o Brian T. Fitzgerald
P.O. BOX 1110
TAMPA, FL 33601-1110

(p)HILLSBOROUGH COUNTY TAX COLLECTOR
2506 N FALKENBURG RD
TAMPA FL 33619-0917

Hillsborough County Tax Collector
PO Box 1110, 27th Floor
Tampa, FL 33601-1110

IRS
Centralized Insolvency Operations
P.O. Box 7346
Philadelphia, PA 19101-7346

Internal Revenue Service
P.O. Box 7346
Philadelphia, PA 19101-7346

Edward Lubin
12524 Blazing Star Dr
Tampa, FL 33626-3068

James C Moon
Meland Budwick PA
200 South Biscayne Boulevard, Suite 3200
Miami, FL 33131-5323

Nancy C. Millan Tax Collector
c/o Brian T. Fitzgerald, Atty 27th FL
P O Box 1110
Tampa, FL  33601-1110

(p)PNC BANK RETAIL LENDING
P O BOX 94982
CLEVELAND OH 44101-4982

PNC Bank, National Association
c/o Adam B. Hall Esq.
Manley Deas Kochalski LLC
P.O. Box 165028
Columbus, OH 43216-5028

Edward J. Peterson III
Johnson Pope Bokor Ruppel & Burns, LLP
401 E Jackson Street, Ste. 3100
Tampa, FL 33602-5228

Dale R Sisco
Dale R. Sisco, PA
777 S. Harbour Island Blvd.
Ste. 320
Tampa, FL 33602-5744

H Michael Solloa Jr
Tripp Scott, P.A.
110 SE 6th Street, 15th Floor
Fort Lauderdale, FL 33301-5004

Southeast Toyota Finance
Attn: Bankruptcy Department
PO Box 991817
Mobile, AL 36691-8817

United States Trustee - TPA
Timberlake Annex, Suite 1200
501 E Polk Street
Tampa, FL 33602-3949


United States of America
c/o Jeremy R Bloor, AUSA
Office of the US Attorney
400 W Washington St. #3100
Orlando, FL 32801-2203

Matthew J Vaughn
Peterson & Myers, P.A.
P.O. Box 24628
Lakeland, FL 33802-4628

World Omni Financial Corp.
c/o H. Michael Solloa, Jr. Esquire
110 SE 6th Street, Suite 1500
Fort Lauderdale, FL 33301-5039


The preferred mailing address (p) above has been substituted for the following entity/entities as so specified
by said entity/entities in a Notice of Address filed pursuant to 11 U.S.C. 342(f) and Fed.R.Bank.P. 2002 (g)(4).


Kathleen L DiSanto
Bush Ross, P.A.
1801 N. Highland Ave
Tampa, FL 33602

(d)Kathleen L DiSanto
Bush Ross, P.A.
1801 N. Highland Ave
Tampa, FL 33602

Adam B Hall
Manley Deas Kochalski LLC
Post Office Box 165028
Columbus, OH 43216


Hillsborough County Tax Collector
Nancy C. Millan Tax Collector
P.O. Box 30012
Tampa, FL 33630-3012

PNC Bank
PO Box 1820
B6-YM13-01-3
Dayton, OH 45401-1820

(d)PNC Bank, NA.
3232 Newmark Drive
Miamisburg, OH 45342


The following recipients may be/have been bypassed for notice due to an undeliverable (u) or duplicate (d) address.


(d)American Express
PO Box 981535
El Paso, TX 79998-1535

(d)Gessler Clinic, P.A.
c/o Matthew J. Vaughn
PO Box 24628
Lakeland, FL 33802-4628

(d)Gessler Clinic, P.A.
c/o Matthew J. Vaughn
PO Box 24628
Lakeland, FL 33802-4628


(d)Hillsborough County Tax Collector
c/o Brian T. Fitzgerald
P.O. BOX 1110
TAMPA, FL   33601-1110

(d)Dominick Intagliato
c/o James C. Moon, Esq.
Meland Budwick, P.A.
200 South Biscayne Blvd., Ste 3200
Miami, FL 33131-5323

(u)PNC Bank, National Association


(u)The United States of America

(u)World Omni Financial Corp.

End of Label Matrix
Mailable recipients    35
Bypassed recipients     8
Total                  43